565 P.2d 967 (1977)
EVERITT LUMBER CO., INC., a Kansas Corporation, Petitioner,
v.
INDUSTRIAL COMMISSION of the State of Colorado (Ex-Officio Unemployment Compensation Commission of Colorado), and Donna M. Weiner, Respondents.
EVERITT LUMBER CO., INC., a Kansas Corporation, Petitioner,
v.
INDUSTRIAL COMMISSION of the State of Colorado (Ex-Officio Unemployment Compensation Commission of Colorado), and Elvah D. Brockman, Respondents.
Nos. 76-549 and 76-576.
Colorado Court of Appeals, Div. III.
May 19, 1977.
*968 Allen, Mitchell, Rogers & Metcalf, Jack D. Vahrenwald, Fort Collins, for petitioner.
J. D. MacFarlane, Atty. Gen., Jean E. Dubofsky, Deputy Atty. Gen., Edward G. Donovan, Sol. Gen., Louis L. Kelley, Asst. Atty. Gen., Denver, for respondent, Industrial Com'n of the State of Colorado (Ex-Officio Unemployment Compensation Commission of Colorado).
No appearance on behalf of respondents, Donna M. Weiner and Elvah D. Brockman.
BERMAN, Judge.
Everitt Lumber Company (employer) seeks in this consolidated review to set aside two final orders of the Industrial Commission which granted claimants, Donna M. Weiner and Elvah D. Brockman, full awards of unemployment compensation benefits under § 8-73-108(7), C.R.S.1973.
Claimants, former employees of Everitt Lumber Company, were terminated by the company for refusing to take a polygraph test which the company, in an investigation of inventory losses, "requested" all employees to take in January 1976. Both Brockman and Weiner had, prior to the company "request," signed forms giving their consent to taking such a test at any time during the course of their employment.
Following their discharges, Brockman and Weiner each filed claims for unemployment compensation benefits, and hearings were held on their claims before different referees. At their respective hearings, the claimants each testified that they had been told by co-employees who had already taken the test that a number of the questions asked thereon were very personal and degrading. Weiner testified that she had asked the individual administering the test whether certain questions were on it, and upon receiving an affirmative reply, had informed him she would not answer such questions. She also testified that she had refused to sign what she termed a "legal waiver form," and that because of her refusal to sign the waiver and answer all questions, the individual administering the test would not allow her to take it.
A representative of the employer testified that he had agreed to sign a written statement for Weiner that any personal information acquired by the testing agency not be released to anyone by the agency, but there is no indication in the record that the testing agency would have been bound to honor such an agreement.
Following the hearings, the respective referees each found that the questions asked on the polygraph test were "offensive" in nature, and that the claimants had not acted unreasonably in refusing to take the test. Consequently, each referee concluded that the employer was basically responsible for the terminations, and each employee was granted a full award of unemployment benefits pursuant to § 8-73-108(7), C.R.S.1973, and Industrial Commission Regulation No. 39(B). The employer than appealed both awards to the Industrial Commission, and supplied the Commission with copies of the questions asked on the polygraph test, and copies of the waiver form each employee taking the test was required to sign by the testing agency. The Commission thereafter adopted and affirmed the awards of the referees, from which orders the employer seeks review.

I.
As framed by the parties, the principal issue raised on these reviews is whether there is sufficient evidence to support the conclusion that the employer was basically responsible for the terminations. The employer contends there is not, and argues that having previously obtained the consent of its employees to the taking of the polygraph test, it could not be held responsible for their subsequent refusal to take the test or for the terminations because of such refusals.
We need not decide whether prior consent to take such a test and subsequent refusal would operate to bar an award of benefits in an appropriate case, see Swope *969 v. Florida Industrial Commission Unemployment Compensation Board of Review, 159 So.2d 653 (Fla.App.1963); see generally Note, 35 Louisiana L.Rev. 694 (1975), for here, more was required of the employees than merely taking the test.
Before the testing agency would administer the polygraph test it required each employee to sign a certain waiver form. A review of the record and the actual forms[1] discloses that these forms would have had the effect of waiving the signing-employees' Fifth Amendment rights against selfincrimination.
Although both employees testified that they had given their written consent to taking a polygraph test, there was no evidence that they had also consented to waiving their Fifth Amendment rights in connection with the taking of such a test. Nor did the employer allege that any waiver of such rights had occurred either through the employees' execution of the consent form or otherwise.[2]
The question thus presented is whether these employees, who, in the course of a theft investigation, refused to waive the protections afforded by the Fifth Amendment, are precluded from receiving an award of unemployment compensation benefits because of that refusal. We hold that invoking the protection of the Fifth Amendment, or refusing to waive its protections, may not be used as the basis for denying these claimants unemployment compensation benefits.[3]See Ault Unemployment Compensation Case, 398 Pa. 250, 157 A.2d 375 (1960); cf. Gardner v. Broderick, 392 U.S. 273, 88 S.Ct. 1913, 20 L.Ed.2d 1082 (1968); Uniformed Sanitation Men Ass'n v. Commissioner of Sanitation, 392 U.S. 280, 88 S.Ct. 1917, 20 L.Ed.2d 1089 (1968).
Here, the test would not be administered by the testing agency unless the particular employee signed the waiver form, and it follows that the employer, by requiring its employees to submit to the demands of the testing agency or be discharged, must be deemed basically responsible for the terminations. Accordingly, full awards of benefits were warranted in the instant cases pursuant to § 8-73-108(7), C.R.S.1973, and Regulation 39(B).
Our conclusion in this regard dispenses with the necessity of discussing the various assertions made by the employer regarding the applicability of the no award and 50% of full award sections of § 8-73-108, C.R.S. 1973.

II.
The employer also argues that neither referee made findings relative to whether the claimants met the basic eligibility requirements of § 8-73-107(1), C.R.S. 1973, which are a prerequisite to receiving unemployment compensation benefits. Accordingly, it is asserted that neither claimant is entitled to receive benefits.
However, the records contain no indication whatsoever that either claimant failed to meet the basic eligibility requirements of § 8-73-107(1), C.R.S.1973. The Industrial Commission is presumed to carry out its official duties with respect to implementation of the Act in a regular manner, see *970 Colorado Springs v. District Court, 184 Colo. 177, 519 P.2d 325 (1974); Town of Frisco v. Brower, 171 Colo. 441, 467 P.2d 801 (1970), and thus, absent a contrary showing, a claimant must be deemed to have met the basic eligibility requirements.
Orders affirmed.
PIERCE and STERNBERG, JJ., concur.
NOTES
[1] Although these forms were not presented at the hearings, the employer having subsequently sent them to the Commission, it cannot now complain of their use. See People v. Shackelford, 182 Colo. 48, 511 P.2d 19 (1973); Palmer v. Gleason, 154 Colo. 145, 389 P.2d 90 (1964).
[2] We intimate no view as to whether such a clause, if included in a "consent form," would be valid.
[3] Whether denial of unemployment compensation benefits due solely to a private employee's assertion of Fifth Amendment rights would be precluded on the basis that such action would amount to "state action," under the Fourteenth Amendment of the United States Constitution, by involving the state in requiring private employees to choose between surrendering their constitutional rights or unemployment compensation benefits, and thus violate the Fifth Amendment of the United States Constitution and Article II, Secs. 18 and 25, Colo.Const., is an issue we need not determine. See Bell v. Maryland, 378 U.S. 226, 84 S.Ct. 1814, 12 L.Ed.2d 822 (1964) (Douglas, J., concurring opinion); Shelley v. Kraemer, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1947).