Tomas MARTINEZ, Petitioner,

v.

The INDUSTRIAL COMMISSION OF COLORADO (Ex–Officio Unemployment Compensation Commission of Colorado) and C.F. & I. Steel Corporation and the Division of Employment of the Department of Labor and Employment of Colorado, Respondents.

No. 80CA0082.

Colorado Court of Appeals, Div. I.

Sept. 11, 1980.

Charles E. Johnson, Montie L. Barringer, Pueblo, for petitioner.

J. D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., Abby L. Pozefsky, Asst. Atty. Gen., Denver, for respondents Industrial Commission of the State of Colorado (Ex–Officio Unemployment Commission of the State of Colorado).

RULAND, Judge.

Petitioner, Tomas Martinez, seeks review of an order of the Industrial Commission denying him unemployment compensation benefits for a period of twelve weeks following his termination at Colorado Fuel and Iron Corporation. While we disagree with the reasoning followed by the Commission, we nevertheless affirm its order.

Petitioner, an American Indian, was employed as an ingot crane operator at CF&I in Pueblo from May 1970 until January 1979. During this time, he became interested in his ethnic and religious heritage and embarked upon a search for a religion which would satisfy his spiritual needs. In the course of his studies, he discovered an Indian god named "Wakan–Tanka," or Great Mystery, who is worshipped by numerous American Indians. At the time petitioner accepted employment with CF&I, he was not a follower of Wakan–Tanka.

According to petitioner, the essence of his new–found religion is that the earth is the Mother of all Mankind and that it is a sin to dig in or be party to the destruction of the earth in any way. CF&I manufactures steel, and it owns and operates mines which supply ore and coal for the production of coke. Consequently, although his job did not bring him into direct contact with CF&I's mining operations, petitioner felt he could no longer condone the activities of CF&I or accept wages derived, at least indirectly, from profits realized by CF&I in its mining operations. He, therefore, terminated his employment and sought unemployment compensation benefits.

At the hearing before the referee, petitioner testified that he quit his job wholly because of its incompatibility with his religious convictions; CF&I did not alter the circumstances or conditions of petitioner's employment or bring any pressure to bear on him in any other way. Petitioner was granted a reduced award under 8–73–108(5)(u), C.R.S.1973 (1979 Cum.Supp.), which is applicable where an employee quits for personal reasons.

The Commission based its decision on findings that petitioner failed to prove that his beliefs were part of an established religion or to show how the tenets of his religion precluded his working for CF&I. The Commission concluded that petitioner's beliefs were "more a statement of religious philosophy, rather than the expression of the tenets of an organized religion."

Petitioner's sole contention on appeal is that the reduction of benefits violates his rights under the First Amendment because he was compelled to quit his job for religious reasons.

We note at the outset that the First Amendment is not so limited in scope as to protect only those beliefs which are tenets of an established religion. So long as a person's beliefs are "sincere and meaningful," *U.S. v. Seeger*, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965), they fall within the ambit of First Amendment protection; "they need not be confined in either source or content to traditional or parochial concepts of religion." *Welsh v. U.S..*, 398 U.S. 333, 339, 90 S.Ct. 1792, 1796, 26 L.Ed.2d 308, 318 (1970). Moreover petitioner is aided by the rule that all doubts as to the religious sufficiency of his beliefs must be resolved in his favor, *United States v. White*, 421 F.2d 487 (5th Cir. 1969), and his claim "that his belief is an essential part of a religious faith must be given great weight." *U.S. v. Seeger, supra.*

Nor does the Commission's conclusion that petitioner's beliefs were part of a "religious philosophy" deprive them of constitutional protection. In *Seeger*, the respondent described his beliefs as a " 'devotion to goodness and virtue for their own sakes, and a religious faith in a purely ethical creed . . .' He cited such personages as Plato, Aristotle, and Spinoza for support of his ethical beliefs and intellectual and moral integrity without belief in god, except in the remotest sense." *Seeger, supra.* Respondent claimed no allegiance to any particular religion. In spite of the clearly philosophical nature of his beliefs, the Court held that they were "religious" so as to entitle him to conscientious objector status, and that it was not the function of the Court to attempt to distinguish between "externally and internally derived beliefs."

Considering the principles enunciated above, we conclude that petitioner satisfied his burden of showing that his beliefs qualified for First Amendment protection. Further, the basis upon which these beliefs preclude him from working for CF&I is uncontradicted.

However, notwithstanding our conclusion that petitioner's beliefs fall within the ambit of the First Amendment, we hold that the denial of unemployment compensation benefits under the facts presented here does not violate his rights under that amendment.

We recognize that a proper respect for the free exercise clause requires the state to pursue a course of neutrality toward religion, *Committee for Public Education v. Nyquist*, 413 U.S. 756, 93 S.Ct. 2955, 37 L.Ed.2d 948 (1973), and that a statute which is neutral on its face, may in its application, offend the constitutional requirement of government neutrality if it unduly burdens the free exercise of religion. *Wisconsin v. Yoder*, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972). But here, the state does not, through the operation of the Unemployment Compensation Act, seek to regulate petitioner's religious beliefs or to penalize him for ascribing to certain beliefs. The purpose of the act is strictly to provide financial relief during periods of involuntary unemployment, *Anderson v. Industrial Commission*, 167 Colo. 281, 447 P.2d 221 (1969), and it in no way conditions the right to receive benefits upon the holding of certain religious beliefs. However, petitioner contends that the Commission's application of the act burdens the free exercise of his religion in violation of the rule announced in *Sherbert v. Verner*, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963). A scrutiny of the facts and holdings in that case compel us to hold otherwise.

In *Sherbert*, appellant, a member of the Seventh Day Adventist Church, was discharged by her employer because she refused to work on Saturdays, her Sabbath. At the time she became a Seventh Day Adventist, employees were permitted to work a five–day work week. Two years later the employer adopted a six–day work week, including Saturday, for all shifts at the employer's mill. Appellant was unwilling to work on Saturdays because of the conflict with her religious beliefs, and she was

unable to find other employment within the area because all mills had switched to the six–day work week. Therefore, she applied for unemployment compensation benefits from the state of South Carolina but was denied them on the grounds that she refused to work "without good cause."

A majority of the Court concluded that appellant's declared ineligibility for benefits derived solely from the practice of her religion and that the pressure upon her to forego that practice was unmistakable. The majority reasoned that the ruling of the South Carolina Commission forced appellant to choose between her job and her religion and thereby burdened her free exercise just as surely as if the state had fined her for her Saturday worship. The Court also noted as "significant" the fact that in South Carolina, a Sunday worshipper could not be compelled to choose between his job and Sunday worship because state law prohibited an employer from requiring any employee to work on Sunday. In light of this discrimination, the majority held "only that South Carolina may not constitutionally apply the eligibility provisions [of its Unemployment Compensation Act] so as to constrain a worker to abandon his religious convictions respecting the day of rest," and that it was not declaring "the existence of a constitutional right to employment benefits on the part of all persons whose religious convictions are the cause of their unemployment." *Sherbert v. Verner*, 374 U.S. at 409–10, 83 S.Ct. at 1797, 10 L.Ed.2d at 974.

■ The instant case can be distinguished from *Sherbert* in four significant respects. First, CF&I made no change in the terms of petitioner's employment which would require him to abandon any religious beliefs that he held at the time of his employment. Rather, the conflict between his job and his religion was created by petitioner's own decision to adopt these beliefs after he was employed.

Second, this is not a situation where the employer can reasonably accommodate petitioner's religious beliefs by adjusting his duties or his work schedule. According to petitioner, his religious beliefs completely foreclose his working for CF&I in any capacity. Third, and in contrast to the statutory scheme in *Sherbert* which discriminated in favor of persons having Sunday as the Sabbath, there is no statute in this state which protects only those whose religious beliefs sanction the mining operations which petitioner sees as irreligious.

Finally, and most importantly, petitioner has failed to establish that the same religious convictions which caused him to quit his employment at CF&I would not render him unavailable for other suitable employment. *See* § 8–73–107(1)(c), C.R.S.1973 (1979 Cum.Supp.). In *Sherbert*, the Court concluded that the claimant was available for other suitable employment but that she would have had to abandon one of the precepts of her religion in order to accept any of the jobs available in her community. Therefore, we conclude that petitioner has failed to establish that application of the Unemployment Compensation Act by the Commission indirectly burdens the practice of his religion. Hence, reduction of his unemployment benefits was proper.

Order affirmed.

BERMAN, J., concurs.

KELLY, J., dissents.

KELLY, Judge, dissenting.

I respectfully dissent.

I agree with the majority that it is possible to distinguish *Sherbert v. Verner* from the case at bar. However, I do not think *Sherbert* ought to be so distinguished.

First, it begs the question to suggest that the petitioner's religious conversion was untimely. The choice of a religious faith is rarely capricious, and here, the petitioner's sincerity has not been questioned.

Second, in my view, the ability of CF&I to accommodate petitioner's beliefs is not legally significant. I cannot weigh the interest of CF&I against the petitioner's constitutional right to the free exercise of his religious beliefs. Third, I perceive no reason for requiring a converse statute which discriminates favorably to those with contrary religious views.

And finally, the issue of petitioner's availability for other employment was not litigated in this case, nor was it decided by the administrative body. Accordingly, I cannot afford this factor any constitutional importance.

I would rule that the petitioner's "personal reason" for quitting his employment is protected by the First Amendment. *Cf. Everitt Lumber Co. v. Industrial Commission*, 39 Colo.App. 336, 565 P.2d 967 (1977). In my view, it demeans the free exercise clause to declare a person's fundamental right to religious belief, while attaching a penalty to its exercise.