Sadhna S. ENGRAFF, Petitioner,

v.

INDUSTRIAL COMMISSION of the State of Colorado (Ex-Officio Unemployment Compensation Commission of Colorado), Colorado Division of Employment and Training, and Public Service Company of Colorado, Respondents.

No. 82CA1167.

Colorado Court of Appeals,
Div. III.

Oct. 13, 1983.

Certiorari Denied March 5, 1984.

William E. Benjamin, Boulder, for petitioner.

J.D. MacFarlane, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Joel W. Cantrick, Sol. Gen., Patricia A. Blizzard, Asst. Atty. Gen., Denver, for respondent Industrial Commission and Division of Employment and Training.

Kelly, Stansfield & O'Donnell, Robert F. Thompson, Denver, for respondent Public Service Co. of Colo.

STERNBERG, Judge.

Public Service Company of Colorado terminated Sadhna S. Engraff from his job when he refused to comply with mandatory safety regulations and because he refused a substitute position. He refused to comply with safety regulations requiring that he wear a safety helmet and respirator because they conflicted with his religious practices. The Industrial Commission disqualified Engraff from receiving unemployment compensation benefits for 12 weeks, ruling that his deliberate disobedience of reasonable company rules was sufficient basis for discharge, and that Public Service had made a reasonable attempt to accommodate him. We set aside the order.

Engraff began working for Public Service in 1972. In 1976, he entered an apprenticeship program at the end of which he would have been a substation electrician. In this capacity, Public Service and the Occupational Safety & Health Administration (OSHA) rules require that, at certain times, he wear a specially fitted safety helmet. In an emergency situation he could also have been required to wear a respirator which would be effective only if there were a seal between the employee's face and the respirator mask.

In June 1980, Engraff notified Public Service that he had become a member of the Sikh Dharma Brotherhood, a religion that requires its members to wear a turban in public, and forbids them to cut their facial and body hair. His supervisors determined that the turban would interfere with the effectiveness of the safety helmet, and that facial hair would prevent an adequate seal surrounding the respirator mask. Public Service feared that failure to comply with these safety regulations would result in exposure to workmen's compensation liability and third-party tort suits, would have an adverse impact on its safety record, and would entail the possibility of monetary sanctions by OSHA for failure to enforce the regulations. Although OSHA had issued a directive exempting members of the Brotherhood from wearing the helmet, Public Service still feared sanctions regarding the respirator. Accordingly, Public Service informed Engraff that it would have no choice other than to suspend him if he would not agree to comply with the safety regulations.

Engraff was suspended without pay on June 30, 1980, when he came to work wearing a turban. Public Service offered to find Engraff an alternative position where its safety regulations would not interfere with his religious practices. The only job available was a clerical position which would not utilize his four and one-half

years of training, and for which he had no experience. In his job as an electrician he lived in Boulder, worked in that area, enjoyed union protection, and was paid $9.48 per hour. The clerical position would have required that he move from his Boulder residence or commute to Denver, it was a non-union position, and would have paid $6.36 per hour. He was offered the position in August 1980, but did not accept it because of those differences. Public Service thereafter terminated his employment.

Engraff applied for, but was denied, unemployment benefits. He appealed this decision. At a hearing before a referee the sincerity and authenticity of Engraff's beliefs were not disputed. The referee found that strict enforcement of the safety regulations was reasonable, and that the alternative job offer was unsuitable because it would have required a considerable cut in pay. Based on these findings, the referee concluded that Engraff should not be penalized for refusing the alternative job, but that he had been discharged because he was unable to comply with reasonable safety requirements and was therefore not entitled to a full award of benefits.

Engraff sought review of that decision from the Industrial Commission, arguing that under the First Amendment his persistence in his religious beliefs did not render him "at fault" in causing the separation, and that Public Service did not make a reasonable effort to accommodate his religious preferences as required by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a)(1); § 2000e(j) (1976 ed.).

The Commission found that Engraff was discharged for deliberately disobeying reasonable company rules. It concluded that the referee erred in considering the job offered in terms of whether it was "suitable" under the predecessor to § 8–73–108(5)(d)(I), C.R.S.1973 (1982 Cum.Supp.) because that provision applies only to an offer made after termination. Instead, the Commission concluded that the job offer should be examined solely in terms of whether it was a reasonable effort to accommodate Engraff's religious beliefs.

Finding that it was a reasonable accommodation, the Commission concluded that Engraff must bear the burden of the separation, and made an award of reduced benefits. He petitioned the Commission for review of its decision, contending that the Commission misinterpreted the issue as being the reasonableness of the accommodation. He asserted that the issue was whether the job was suitable within the meaning of § 8–73–108(5)(d), C.R.S.1973 (1982 Cum.Supp.). The petition was denied.

### I.

In response to Engraff's argument in this review that the Commission's decision violated his First Amendment right to the free exercise of his religion, the respondents argue that this issue cannot now be raised because it was not included in his petition to review the final order. We disagree.

■ Any party dissatisfied with an initial decision of the Commission must petition the Commission for review of its decision before an action may be brought in the Court of Appeals. Section 8–74–104, C.R.S. 1973 (1982 Cum.Supp.). Engraff followed this procedure. The petition took issue with the entire structure of the Commission's decision so that the argument raised here on review would be an issue only if the Commission persisted in its interpretation of the Act. The issue of Public Service's obligation to accommodate Engraff's religious beliefs was fully briefed when he appealed the referee's decision. It was not raised for the first time in this court, and the Commission was sufficiently apprised of Engraff's objection to the ruling to enable it to correct its error. Thus, asserting a First Amendment argument on appeal does not contravene the procedural scheme of the Act. *See Yanish v. Industrial Commission*, 38 Colo.App. 492, 558 P.2d 1007 (1976).

### II.

Addressing the substantive issues, Public Service contends that the public interest in

safety justifies requiring Engraff to bear responsibility for his separation, and that it met its duty reasonably to accommodate his religious beliefs. We disagree with these arguments.

Under the Commission's formulation of the issue, the central question concerns whether there was a reasonable effort to accommodate Engraff's beliefs, determined by whether it was reasonable for Public Service to insist on strict adherence to its rules and to require that he accept another position.

We do not view this to be the determinative question. This question relates to whether his discharge constituted employment discrimination under Title VII of the Civil Rights Act of 1964, as defined by 29 C.F.R. 1605.2 (1982). *Trans World Airlines, Inc. v. Hardison,* 432 U.S. 63, 97 S.Ct. 2264, 53 L.Ed.2d 113 (1977). *See also Nottelson v. Wisconsin Department of Industry,* 94 Wis.2d 106, 287 N.W.2d 763 (1980).

The Industrial Commission concluded that Engraff's "refusal to comply with the employer's safety rules was a sufficient basis for discharge under the provisions of the Colorado Employment Security Act." The important question, however, is whether this refusal should disqualify Engraff from a full award under § 8–73–108(4), C.R.S.1973 (1982 Cum.Supp.).

Though Engraff was discharged for failing to comply with a safety rule, there is no question that his refusal was based on his religious beliefs, the sincerity of which are not questioned. Had there not been this tension between these beliefs and his job, he would not have been initially suspended, and would not have been placed in a position of having to accept an unsuitable job or be fired. After he was fired he was penalized with a reduced award for failing to comply with the safety rules.

■ We find this penalty to be constitutionally impermissible. While Colorado's Employment Security Act does not directly penalize Engraff for his religious beliefs, the application of the Act in this instance had the effect of forcing him to choose between fidelity to those beliefs and the forfeiture of benefits on the one hand and abandonment of those beliefs to accept suitable work on the other. *See Sherbert v. Verner,* 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963). The Industrial Commission's imposition of this choice "puts the same kind of burden upon the free exercise of religion as would a fine imposed against" Engraff for his wearing a turban or refusing to cut his facial hair in conformity with his religious beliefs. *Sherbert, supra.*

Thus, here, though neutral on its face, the Act, in its application, offended the constitutional requirement for governmental neutrality because it unduly burdened Engraff's free exercise of religion. *Wisconsin v. Yoder,* 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972).

■ *Sherbert, supra,* and *Thomas v. Review Board,* 450 U.S. 707, 101 S.Ct. 1425, 67 L.Ed.2d 624 (1981) require that, should the state burden the free exercise of religion, it must do so in the least restrictive available way to achieve a compelling state interest. The respondents view this case as concerning a conflict between Engraff's religious beliefs and reasonable safety practices, and argue that Engraff's discharge was justified to ensure compliance with the safety regulations. However, the granting of an award of unemployment compensation neither relates to nor jeopardizes those safety regulations.

Under § 8–73–108(4), an individual separated from his job for the enumerated reasons shall be given a full award of benefits. The section also notes that these reasons are not exclusive, stating:

"The following reasons shall be considered along with any other factors which may be pertinent to such determination."

*Cf. Sims v. Industrial Commission,* 627 P.2d 1107 (Colo.1981).

Because *Thomas, supra,* dictates that a person may not be penalized for leaving a job which becomes objectionable for religious reasons, the factor which resulted in

Engraff's separation from one position and then being offered another requires the same protection as other reasons listed in § 8–73–108(4). Tension between economic considerations and First Amendment rights must be resolved in favor of the latter.

While Public Service made attempts to find another position for Engraff, the alternative job was not suitable, and the referee so found. It involved a reduction in salary of nearly 33%, would have required a move to Denver or a daily commute from Boulder to Denver, was a non-union position, and was a job for which he had no training. To interpret the Act as requiring Engraff to accept an unsuitable position, or forfeit full benefits, because his religion was the motivating factor in the need to change work, would be imposing a penalty solely because he chose to adhere to his religious beliefs, thereby creating the same pressure to violate his beliefs as that which existed in *Thomas* and *Sherbert.*

In *Martinez v. Industrial Commission,* 618 P.2d 738 (Colo.App.1980), a panel of this court, in a divided opinion, affirmed a reduced unemployment compensation award after a claimant quit his job for religious reasons, distinguishing *Sherbert v. Verner, supra.* There, it was noted that Martinez' employer had made no change in the terms of his employment which forced him to abandon any religious belief. While that is also true here, in our view, this distinction places primary importance on the timing of Engraff's religious conversion and ignores the burden placed on the free exercise of his religious beliefs. Engraff should not be penalized because he did not embrace his faith at the "proper time." *See Martinez, supra,* (Kelly, J., dissenting). In light of *Thomas v. Review Board, supra,* decided after *Martinez,* we consider the distinctions made in *Martinez* to be untenable and, thus, do not follow that case.

We hold, therefore, that Engraff was entitled to an award of full benefits under § 8–73–108(4).

The order of the Industrial Commission is set aside and the cause is remanded with directions to grant a full award of unemployment compensation benefits.

VAN CISE and KELLY, JJ., concur.