**Rose M. PEISTER and E.L. Peister, Plaintiffs–Appellants,**

v.

**STATE of Colorado, DEPARTMENT OF SOCIAL SERVICES, OFFICE OF APPEALS; State of Colorado, Department of Social Services; Douglas County Department of Social Services; Pattie Kotzer, Eligibility Technician; Carol Clark, Eligibility Technician; Defendants–Appellees.**

Nos. 91CA1833, 92CA0215.

Colorado Court of Appeals,
Div. III.

Dec. 31, 1992.

Rehearing Denied Feb. 25, 1993.

Rose M. Peister, pro se.

E.L. Peister, pro se.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Vivianne M. Chaumont, Asst. Atty. Gen., Denver, for defendants-appellees.

Opinion by Judge ROTHENBERG.

Plaintiffs, Rose M. and E.L. Peister, appeal from two trial court judgments affirming the Colorado Department of Social Services' denial of benefits under the Old Age Pension Program. We affirm.

In 1976, the Peisters decided that using social security numbers would threaten their future spiritual well being because the numbers represent the "mark of the beast" referenced in chapters 13 and 14 of the *Book of Revelation* as contained in the New Testament. This mark is characterized as a number required for buying and selling, *see Leahy v. District of Columbia,* 833 F.2d 1046 (D.C.Cir.1987), and there is a prophecy that those who receive such mark will be condemned to eternal damnation. *See Book of Revelation* 14:9–11.

After reaching that conclusion, the Peisters returned their social security cards to the federal Social Security Administration and "resigned" from the system.

In 1990, Mrs. Peister applied for Colorado Old Age Pension benefits. On that part

of the application requesting her social security number, she wrote "none." In January 1991, Mr. Peister applied for Colorado Old Age Pension benefits, and he also refused to provide a social security number on his application. The Douglas County Department of Social Services (the department) denied the Peisters' applications for old age pension benefits based on their refusal to provide social security numbers.

In separate actions, the Peisters pursued administrative appeals of those denials, but the denials were upheld by an Administrative Law Judge (ALJ) and the Office of Appeals. Finally, in separate actions, the Peisters appealed the Office of Appeals' decisions to the district court.

The trial courts, with different judges presiding, affirmed the department's decisions. The Peisters have consolidated their claims for purposes of this appeal.

## I.

The Old Age Pension program is a state program for financial assistance to eligible persons who have reached the age of 60. Section 26–2–111(2), C.R.S. (1989 Repl.Vol. 11B). A person must be granted old age pension benefits if:

(a) He is a resident of the state of Colorado....

(b) He has insufficient income, property, or other resources to meet his needs *as determined pursuant to the rules and regulations of the state department....* (emphasis added)

Sections 26–2–111(1) and 26–2–111(2)(a)(I), C.R.S. (1989 Repl.Vol. 11B).

The Peisters first contend that they meet the statutory requirements for old age pension benefits and that, therefore, they are entitled to receive them. The Peisters also contend that § 26–2–111 does not specifically deny benefits to an applicant who does not have, or refuses to give, a social security number and, as such, the division erred in denying them benefits. We reject the Peisters' contentions.

When a court construes a statute, it must construe the entire act, giving consistent, harmonious, and sensible effect to all of its parts. *See Adams v. Colorado Department of Social Services*, 824 P.2d 83 (Colo.App.1991). Thus, § 26–2–111 must be read in conjunction with the other sections of the Colorado Public Assistance Act, § 26–2–101, et seq., C.R.S. (1989 Repl. Vol. 11B).

Section 26–2–108(1)(a), C.R.S. (1989 Repl. Vol. 11B) provides:

Upon completion of the verification and record of each application for assistance payments, *the county department, pursuant to the rules and regulations of the state department*, shall determine whether the applicant is eligible for assistance payments, the amount of such assistance payments to be granted, and the date upon which such assistance payments shall begin. (emphasis added)

*See also Dodge v. Department of Social Services*, 657 P.2d 969 (Colo.App.1982) (the General Assembly may permit any agency to promulgate rules and regulations to carry out the legislative purposes of the power granted to the agency).

Here, the regulations require, *inter alia*, that the department determine an applicant's need for financial assistance by considering his or her available income and resources. The regulations also require that an applicant be denied benefits if his or her income and resources exceed the appropriate limits. *See* 9 Code Colo.Reg. 2503–3, §§ 3.360.1 and 3.360.2 (1983).

Importantly, 9 Code Colo.Reg. 2503–3, 3.110.25 (1983) requires that each applicant provide his or her social security number to the county department in order for the department to determine the applicant's need for assistance. That regulation states:

*Each applicant* for, or recipient of, financial assistance is *required to provide a social security account number (SSN) to the county department ....* For those applicants/recipients who are unable to provide an SSN, an application form ... shall be completed by the applicant/recipient for each member of the assistance unit without an SSN for whom assistance is requested. The agency shall explain to applicants and partici-

pants that *refusal or failure without good cause to provide an SSN will result in exclusion of the individual for whom an SSN is not obtained....* (emphasis added)

In affirming the ALJ's initial decision denying the Peisters' requests for benefits, the Office of Appeals determined that the Peisters had not shown "good cause" for failing to provide the social security numbers. As to what constitutes "good cause," it stated:

[T]he issue of 'good cause' is intended to mean that 'despite the good faith effort of the applicant/recipient, there exists circumstances which are outside of his/her control which prevent the applicant/recipient from complying with the/a regulation.' ... In this case, while the Office of Appeals agrees with [the ALJ's] opinion of the sincerity of Ms. Peister, it must also agree with the ALJ that Ms. Peister has not provided sufficient good cause, because her decision lies well within her control.

*See also* 9 Code Colo.Reg. 2503–1, § 3.810.21 (1983) ("good cause" as used in regulation pertaining to the overpayment of AFDC benefits means "conditions outside the control of the individual such as ... sudden illness, fire, theft, acts of God, natural disasters, etc.").

Here, the Peisters contend that the department erred in concluding that their sincerely held religious beliefs do not constitute "good cause."

We perceive no error in the department's interpretation of its regulation. *See Bryant v. Career Service Authority,* 765 P.2d 1037 (Colo.App.1988) (an administrative agency's interpretation of its own regulations should be given great weight unless it is plainly erroneous or inconsistent with the rule).

The department uses social security numbers to obtain information concerning an applicant's income and eligibility from the Internal Revenue Service, Social Security Administration, and Colorado Department of Labor and Employment. *See* 9 Code Colo.Reg. 2503–1, § 3.120.22 (1983). Thus, the social security number is the key to the

verification process, and accordingly, its absence has a significant impact that needs to be avoided if at all possible.

Additionally, the Peisters have failed to provide this court with a transcript of the hearing before the ALJ, and therefore, we must assume that the ALJ's findings were correct. *See People v. Wells,* 776 P.2d 386 (Colo.1989) (it is presumed that material portions omitted from the record support the judgment).

## II.

■ We also reject the Peisters' contention that the regulation discriminates against their religious beliefs.

In *Bowen v. Roy,* 476 U.S. 693, 106 S.Ct. 2147, 90 L.Ed.2d 735 (1986), the United States Supreme Court addressed a very similar issue. There, the appellees had refused to comply with federal statutes requiring participants in Aid to Families with Dependent Children and Food Stamp programs to provide state welfare agencies with the social security numbers of the members of their household. They contended that obtaining a social security number for their daughter would violate their religious beliefs and would obstruct the child's spiritual growth.

The United States Supreme Court upheld the social security number requirement finding it "wholly neutral in religious terms and uniformly applicable." The Court also concluded that the requirement promotes a legitimate and important public interest. In reaching this conclusion, the Court stated:

The Court has steadfastly maintained that claims of religious conviction do not automatically entitle a person to fix unilaterally the conditions and terms of dealings with the government. Not all burdens on religion are unconstitutional....

Absent proof of an intent to discriminate against particular religious beliefs or against religion in general, the Government meets its burden when it demonstrates that a challenged requirement for governmental benefits, neutral and uni-

form in its application, is a reasonable means of promoting a legitimate public interest.

Thus, the Court found that social security numbers are a reasonable tool for the government to use in determining and verifying an applicant's eligibility for public benefits. And, the Court also held that the denial of a government benefit by a uniformly applicable statute does not constitute infringement of a religious liberty.

Although this case involves state rather than federal benefits, we conclude that the United States Supreme Court's rationale and holding in *Bowen* is sound and should be followed. The regulation at issue here is uniformly applied to all applicants and promotes a legitimate and important public interest by allowing the department to determine and verify an applicant's eligibility for benefit from the applicant's social security number. The Peisters have failed to show the regulation is not neutrally and uniformly applied to all applicants and, as such, have also failed to show any intent to discriminate against their religious beliefs. *See Bowen v. Roy, supra; cf. Martinez v. Industrial Commission,* 618 P.2d 738 (Colo.App.1980).

In so ruling, we emphasize that we do not question the sincerity of the Peisters' religious beliefs. Moreover, we are aware that religious beliefs are intensely personal and do not have to be acceptable, logical, consistent, clearly articulated, comprehensible to others, or even shared by other members of one's own religious sect in order to be entitled to constitutional protection. *Thomas v. Review Board of Indiana Employment Security Division,* 450 U.S. 707, 101 S.Ct. 1425, 67 L.Ed.2d 624 (1981). Nevertheless, the United States Supreme Court's decision in *Bowen v. Roy, supra,* has determined this issue adversely to the Peisters' position and, in the absence of Colorado precedent to the contrary, we adopt that interpretation.

### III.

The Peisters next contend that the trial court abused its discretion in failing to rule on their motions for summary judgment and that summary judgment was proper because none of the defendants responded to their motions.

Initially, we note that the department *did* respond to the Peisters' motions for summary judgment and that, in the trial court's order affirming the department's denial of benefits to *Mr.* Peister, the court ruled that his motion for summary judgment was moot.

In any event, in view of the trial court's decision that the department properly denied the Peisters' request for benefits, we find no abuse of discretion in the court's failure to rule on the motions for summary judgment.

### IV.

■ We also reject the Peisters' contention that the trial court abused its discretion in failing to rule on their motions for default judgment.

Mrs. Peister filed her motion for default judgment after filing her notice of appeal with this court. Therefore, the trial court was without jurisdiction to rule on her motion. *See Schnier v. District Court,* 696 P.2d 264 (Colo.1985) (generally, the filing of the notice of appeal divests the trial court of jurisdiction).

In light of the trial court's specific ruling in its order that Mr. Peister's motion for default judgment was moot, we reject his contention that it abused its discretion in failing to rule on his motion for default judgment.

We reject the Peisters' remaining contentions as without merit.

The Department of Social Services' motion for sanctions is denied.

The judgments are affirmed.

SMITH, J., concurs.

CRISWELL, J., dissents.

Judge CRISWELL, dissenting.

I respectfully dissent because I am of the view that the very regulation relied upon by the Department of Social Services to deny Old Age Pension benefits to the Peis-

ters requires that they be granted such benefits without obtaining social security numbers. Hence, although it is obviously necessary to interpret that regulation in light of applicable constitutional principles, it is not necessary, in my view, to address the constitutional issues directly.

In considering the issues presented here, certain preliminary observations should be made.

First, while Colo. Const. art. II, § 4, embodies the same principles of religious freedom as are to be found in the First Amendment, *Americans United for Separation of Church & State Fund, Inc. v. State,* 648 P.2d 1072 (Colo.1982), it is, nevertheless, the "text and purpose" of the state provision which must be looked to. *Conrad v. Denver,* 656 P.2d 662 (Colo.1982).

That state provision is specific in providing that "no person shall be denied any civil or political right, *privilege* or capacity, on account of his opinions concerning religion." (emphasis supplied) Hence, to the extent that the case relied upon by the majority, *Bowen v. Roy,* 476 U.S. 693, 106 S.Ct. 2147, 90 L.Ed.2d 735 (1986), draws some distinction between a government's penalizing act and one that consists simply in a denial of benefits, such distinction would seem not to be one that can legitimately be drawn under the state constitution.

Second, the findings of the ALJ here were that the Peisters came to the honest, good faith, sincerely held religious belief that the social security number was the "mark of the beast" as described in portions of the Christian bible. Hence, in early 1976—some 15 years before they made application for an old age pension—they returned their social security cards and submitted their "resignation" to the Social Security Administration. The ALJ specifically found that, since that date, the Peisters have refused to place their social security numbers "on *any* document or forms or used [those numbers] in *any* manner." (emphasis supplied)

Third, the ALJ also found that a social security number "is unique to the individual who has it and is used *almost exclusive-ly* in connection with the *receipt and reporting of income.* It thus has a dual advantage in the exchange and verification of information which no other currently established system can match." (emphasis supplied)

It was this latter finding that led the ALJ, and later the Department of Social Services, to conclude that requiring disclosure and use of a social security number was constitutionally permissible.

It should be emphasized, however, that this finding was only a *general* one; there was no finding that requiring the Peisters to obtain a social security number would aid in determining *their* present eligibility for an old age pension. Indeed, given the ALJ's explicit finding that they had not made use of such numbers for some 15 years, there is no explanation in either the ALJ's finding or the Department's decision as to how having a social security number assigned to them would aid in determining their present or past financial status.

Of course, requiring the assignment of such a number might aid in the verification of their financial status in the future. This would be true, however, only if they used those numbers on their income tax returns and similar documents where such numbers are normally used.

And, this fact leads to my final preliminary observation. The requirement imposed is not simply to obtain and supply social security numbers. If the purpose of such requirement is to be served, the Peisters must in the future *use* the number in conjunction with all transactions in which such numbers are normally supplied. For, if they do not do so, then those numbers cannot serve for the "exchange and verification of information" that the ALJ found to be important.

Hence, the requirement imposed upon the Peisters here is not simply a compelled breach of faith in an isolated instance. Rather, if they seek to obtain an Old Age Pension benefit from Colorado, they are required to abandon, for all purposes, their sincerely held religious concept that the use of such numbers are forbidden by God.

**900**

Given these circumstances, therefore, I am convinced that this record demonstrates, as a matter of law, that there exists "good cause" for the Peisters' failure to provide social security numbers to the Department, however that term may be interpreted.

The Department concedes that 9 Code Colo.Reg. 2503-3, 3.110.25 (1983) provides for a waiver of the pertinent requirement if there exists "circumstances which are outside [the] control" of the applicant. It concluded, however, that the decision not to supply such numbers "lies well within [the Peisters'] control."

This latter conclusion is, in my opinion, not only not supported by the evidence, but is in direct conflict with the ALJ's specific finding that the Peisters' decision was compelled by a sincerely held religious belief. Given this explicit finding, I am forced to conclude that, to the Peisters, the *word* of God is just as much an external influence as are the "acts of God," which the Department itself recognizes as constituting "good cause" under its regulation. *See* 9 Code Colo.Reg. 2503-1, § 3.810.21 (1983).

While the Department may be empowered to adopt a requirement for the provision of social security numbers with no exceptions, if, as here, it authorizes an exception for "good cause," I am convinced that a sincerely held religious belief constitutes such good cause.

I would, therefore, reverse the Department's determination and remand this matter to it for further proceedings.