The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader.  The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
November 12, 2020

## 2020COA160

**No. 18CA1156, *People v. Torline* — Constitutional Law — First Amendment — Freedom of Religion; Crimes — Uniform Controlled Substances Act of 2013 — Offenses Relating to Marijuana and Marijuana Concentrate**

The defendant, an ordained minister in a cannabis ministry, challenges his convictions for growing and dispensing marijuana on the ground that he uses marijuana for religious purposes.  A division of the court of appeals concludes that applying Colorado's law criminalizing the possession and growing of marijuana to a person who conducts such activities for religious reasons does not violate the person's rights under the Free Exercise Clauses of the United States and Colorado Constitutions.  Therefore, the division affirms the defendant's convictions.

COLORADO COURT OF APPEALS                                    **2020COA160**

Court of Appeals No. 18CA1156
Mesa County District Court No. 16CR6064
Honorable Brian J. Flynn, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Aaron Snyder Torline,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division VII
Opinion by JUDGE NAVARRO
Tow and Lipinsky, JJ., concur

Announced November 12, 2020

Philip J. Weiser, Attorney General, Shelby Krantz, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Tanja Heggins, Alternate Defense Counsel, Denver, Colorado, for Defendant-Appellant

¶ 1     As a matter of first impression, we conclude that applying a Colorado statute criminalizing the possession and growing of marijuana to a person who conducts such activities for religious reasons does not violate the person's rights under the Free Exercise Clauses of the United States and Colorado Constitutions.  As a result, we affirm the judgment of conviction entered against defendant, Aaron Snyder Torline.

## I.     Factual and Procedural History

¶ 2     In July 2016, Mesa County police officers noticed Torline and another person walking in and out of a garage and loading trash bags into the bed of a pickup truck, which the other person then drove away.  Officers stopped the truck for a traffic infraction.  A police dog alerted to the presence of drugs, and police discovered that the trash bags contained marijuana.

¶ 3     Officers contacted Torline, who said there was a marijuana growing operation inside the garage.  Torline consented to a search and explained his operation.  He estimated that he was growing approximately one hundred and fifteen plants, and that he processed about ten plants per month with a yield of about two ounces per plant.

¶ 4     The prosecution charged Torline with cultivation of marijuana, thirty or more plants, and possession with intent to manufacture or distribute marijuana or marijuana concentrate, more than five pounds but not more than fifty pounds.  *See* § 18-18-406(2)(b)(I), (2)(b)(III)(B), (3)(a)(I), C.R.S. 2016.[1]  Torline's counsel expressed his wish to raise an "affirmative defense" to the charges on the ground that section 18-18-406 violates Torline's constitutional rights because he engaged in the charged conduct pursuant to a sincerely held religious belief.  Defense counsel also asked the trial court to instruct the jury on that defense.

¶ 5     In support, Torline's attorney argued the following.  Torline is an ordained minister with the Hawaii Cannabis Ministry, an organization professing the belief that the cannabis plant is a gift from God and can aid in the experience of spirituality.  The ministry incorporates cannabis into its religious practices, including its prayers, rituals, and sacraments.  It has registered members, a hierarchy, a system of beliefs, and holy days.  As a "ganja minister,"

---

[1] The statute has since been amended; we cite the provisions in effect at the time of Torline's charged conduct.

2

Torline provides marijuana to members of his congregation, which numbers approximately thirty people in Grand Junction.

¶ 6    The trial court concluded that Colorado law does not support Torline's proposed defense and denied his motion to instruct the jury on the defense. Torline then waived his right to a jury trial, was tried by the court, and was convicted as charged.

## II.    The Free Exercise Clauses

¶ 7    Torline contends that section 18-18-406 was "unconstitutionally applied to him" in violation of the Free Exercise Clauses of the Federal and State Constitutions. Relatedly, he argues that the trial court erred by declining to instruct the jury on his defense that his conduct was privileged under the Constitutions.

### A.    Standard of Review and Foundational Principles

¶ 8    The constitutionality of a statute is a legal question that we review de novo. *People v. Graves*, 2016 CO 15, ¶ 9. Statutes are presumed to be constitutional, and the challenger bears the burden to prove their unconstitutionality beyond a reasonable doubt. *Id.*

¶ 9    The Free Exercise Clause of the First Amendment provides, "Congress shall make no law . . . prohibiting the free exercise

3

[of religion]." U.S. Const. amend. I. The Free Exercise Clause has been made applicable to the states by incorporation into the Fourteenth Amendment. *Emp't Div., Dep't of Human Res. v. Smith,* 494 U.S. 872, 876-77 (1990). Article II, section 4 of the Colorado Constitution provides, in pertinent part, as follows:

> The free exercise and enjoyment of religious profession and worship, without discrimination, shall forever hereafter be guaranteed; and no person shall be denied any civil or political right, privilege or capacity, on account of his opinions concerning religion; but the liberty of conscience hereby secured shall not be construed to . . . justify practices inconsistent with the good order, peace or safety of the state. . . . Nor shall any preference be given by law to any religious denomination or mode of worship.

Because the federal and state constitutional provisions embody similar values, we look for guidance in applying the Colorado provision to the body of law developed in the federal courts with respect to the meaning and application of the First Amendment. *Conrad v. City & Cty. of Denver*, 656 P.2d 662, 670-71 (Colo. 1982).

¶ 10      "The free exercise of religion means, first and foremost, the right to believe and profess whatever religious doctrine one

4

desires." *Smith*, 494 U.S. at 877.  The exercise of religion can also involve the "performance of (or abstention from) physical acts."  *Id.*

¶ 11     The Free Exercise Clause is not so limited in scope as to protect only those beliefs that are tenets of a traditional or "established religion."  *Martinez v. Indus. Comm'n of Colo.*, 618 P.2d 738, 740 (Colo. App. 1980).  If a person's religious beliefs are "sincere and meaningful," they fall within the ambit of First Amendment protection.  *United States v. Seeger*, 380 U.S. 163, 166 (1965).  A person's claim "that his belief is an essential part of a religious faith must be given great weight."  *Id.* at 184; *Martinez*, 618 P.2d at 740.

## B.     Analysis

¶ 12     At the time of Torline's conduct, section 18-18-406(3)(a) provided that, with exceptions not applicable here, "[i]t is unlawful for a person to knowingly cultivate, grow, or produce a marijuana plant or knowingly allow a marijuana plant to be cultivated, grown, or produced on land that the person owns, occupies, or controls."  Section 18-18-406(2)(b)(1) provided that, with exceptions not applicable here, "it is unlawful for a person to knowingly dispense,

sell, distribute, or possess with intent to manufacturer, dispense, sell, or distribute marijuana or marijuana concentrate . . . ."

¶ 13    Torline acknowledges that sections 18-18-406(3)(a) and 18-18-406(2)(b) are neutral laws of general applicability.  Still, he maintains that applying them to his charged conduct violates his rights under the Free Exercise Clause because the laws "prohibit conduct that was undertaken for religious reasons."  He also asserts that less restrictive means exist to enforce "the government's compelling interest in marijuana laws."  (He does not, however, identify any other means.)  Torline is mistaken.

¶ 14    The Free Exercise Clause proscribes laws that "single out the religious for disfavored treatment."  *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 582 U.S. ___, ___, 137 S. Ct. 2012, 2020 (2017).  The Free Exercise Clause, however, does not excuse a person from "compliance with an otherwise valid law prohibiting conduct that the State is free to regulate."  *Smith*, 494 U.S. at 878-79.  In other words, while the protection for religious belief and the profession of that belief is absolute, the protection for religious conduct is not.  *Cantwell v. Connecticut*, 310 U.S. 296, 303-04 (1940); *Sanderson v. People*, 12 P.3d 851, 853 (Colo. App. 2000).

6

¶ 15    To illustrate, in *Smith*, 494 U.S. at 874, two men were denied unemployment benefits after their employment was terminated for using peyote, a controlled substance.  They challenged that decision on the ground that they had ingested the peyote for sacramental purposes at a Native American church to which they belonged.  *Id.*  Like Torline, they contended that "their religious motivation for using peyote places them beyond the reach of a criminal law that is not specifically directed at their religious practice, and that is concededly constitutional as applied to those who use the drug for other reasons."  *Id.* at 878.

¶ 16    The Supreme Court rejected that argument, holding that neutral laws of general applicability do not offend the Free Exercise Clause even when they have an incidental effect on religious practices.  *Id.*; *see also Sanderson*, 12 P.3d at 853 (recognizing this holding of *Smith*).  Hence, the right of free exercise does not relieve a person from complying with a "valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes)."  *Smith*, 494 U.S. at 879 (citation omitted).  The Court reasoned that to make a person's obligation to obey such a law "contingent upon the law's

coincidence with his religious beliefs . . . permit[s] him, by virtue of his beliefs, 'to become a law unto himself.'" *Id.* at 885 (citation omitted).

¶ 17    Section 18-18-406 is similar to the law challenged in *Smith*. Because, as in *Smith*, the statute is a neutral law of general applicability, we have no trouble rejecting Torline's free exercise challenge. The statute advances the legitimate interests of public health and safety and is rationally related to that end. *See* Colo. Const. art. XVIII, § 16(1)(b) (finding that regulation of marijuana is in the interest of public health and safety); *Town of Dillon v. Yacht Club Condos. Home Owners Ass'n*, 2014 CO 37, ¶ 31 (noting a legitimate interest in public health and safety). Therefore, the availability of less burdensome alternatives, if any exist, is irrelevant. *See Yacht Club Condos.*, ¶ 31.

¶ 18    Moreover, although there can be circumstances where a facially neutral law violates the Free Exercise Clause, Torline does not allege or identify any such circumstances surrounding section 18-18-406. *Cf. Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 536-40 (1993) (holding that a facially neutral law banning animal sacrifice was unconstitutional because

8

its exceptions for secular conduct and the surrounding circumstances showed that the city adopted the ordinance because of animus toward the Santería church). He does not argue that the legislature enacted section 18-18-406 with the object of restricting religious practices. Nor are we aware of circumstances suggesting that the legislation was motivated by religious animus.

¶ 19 As a result, we join the many jurisdictions that have rejected cannabis ministries' members' free-exercise challenges to marijuana convictions. *See Guam v. Guerrero*, 290 F.3d 1210, 1216 (9th Cir. 2002); *United States v. Meyers*, 95 F.3d 1475, 1481 (10th Cir. 1996); *Hutchinson v. Maine*, 641 F. Supp. 2d 40, 47 (D. Me. 2009); *Rheuark v. State*, 601 So. 2d 135, 139 (Ala. Crim. App. 1992); *People v. Trippet*, 66 Cal. Rptr. 2d 559, 565 (Ct. App. 1997); *Nesbeth v. United States*, 870 A.2d 1193, 1198 (D.C. 2005); *State v. Sunderland*, 168 P.3d 526, 534 (Haw. 2007); *State v. Fluewelling*, 249 P.3d 375, 379 (Idaho 2011); *State v. Venet*, 797 P.2d 1055, 1057 (Or. Ct. App. 1990); *Burton v. State*, 194 S.W.3d 686, 688 (Tex. App. 2006).

¶ 20 We also note that Colorado is friendlier than most states to marijuana use. Unlike the absolute prohibition in *Smith,* the

statutes under which Torline was convicted are subject to article XVIII, section 16 of the Colorado Constitution, which permits a person to possess, grow, and use marijuana in small amounts for personal use and authorizes a person to conduct larger-scale activities with a license. The Free Exercise Clause does not require a further exception for all religiously motivated uses of marijuana. *See Smith*, 494 U.S. at 890 (noting that, although states may create statutory exemptions for religious uses of controlled substances, they are not required to do so).

¶ 21 In sum, the incorporation of marijuana and marijuana concentrate into religious rituals is subject to regulation on equal terms with secular marijuana use. Colorado law does not penalize such conduct *because of* its religious character. *See Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 449 (1988) (finding no free-exercise violation where governmental action did not "penalize religious activity by denying any person an equal share of the rights, benefits, and privileges enjoyed by other citizens"). We therefore hold that the Free Exercise Clause does not excuse people and organizations from complying with section 18-18-406.

¶ 22    Because applying section 18-18-406 to Torline's conduct does not violate his constitutional rights, there was no legal basis for his proposed defense.  So the trial court correctly rejected the defense, his jury instructions, and his proffered evidence in support of the defense.  *See Hoggard v. People*, 2020 CO 54, ¶ 27 (noting that a trial court has a duty to instruct the jury correctly on the applicable law); *People v. Smith*, 77 P.3d 751, 756 (Colo. App. 2003) ("[A] trial court may refuse to give a defendant's theory of the case instruction that misstates the law . . . ."); *see also* CRE 402 ("Evidence which is not relevant is not admissible."); *People v. Evans*, 710 P.2d 1167, 1169 (Colo. App. 1985) (holding that evidence of the defendant's personal religious belief was irrelevant to the charge of distribution of marijuana to others).

III.    Proof that the Offense Was Committed In Colorado

¶ 23    Finally, Torline contends that the prosecution did not prove that his conduct occurred within Colorado.  *See* § 18-1-201(1)(a), C.R.S. 2019.

¶ 24    We review the record de novo to determine whether the evidence presented was sufficient in both quantity and quality to sustain a defendant's conviction.  *McCoy v. People*, 2019 CO 44,

¶ 63. We consider whether the relevant evidence, both direct and circumstantial, when viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable mind that the defendant is guilty of the charge beyond a reasonable doubt. *Id.*

¶ 25 Two officers testified that they investigated Torline's conduct "here in Mesa County." Torline contends that this evidence was sufficient to prove that the offenses occurred in Mesa County but not to prove that they occurred in Colorado. We are not persuaded.

¶ 26 "Here" referred to the place where the witnesses were testifying. Torline's trial was held in the District Court of Mesa County, Colorado (also known as the Twenty-First Judicial District Court). It is therefore clear from the context of the testimony that "here in Mesa County" was referring to Mesa County, Colorado. Consequently, sufficient evidence supports the court's finding that the charged conduct occurred in Colorado.

## IV. Conclusion

¶ 27 The judgment of conviction is affirmed.

JUDGE TOW and JUDGE LIPINSKY concur.