Suzan ZANER and Ray Owens, Plaintiffs–Appellants,

v.

CITY OF BRIGHTON, Defendant– Appellee,

and

United Power, Inc., Intervenor–Appellee.

No. 94CA0139.

Colorado Court of Appeals, Division III.

Dec. 1, 1994.

As Modified on Denial of Rehearing Jan. 19, 1995.

Certiorari Granted June 30, 1995.

Kevin B. Pratt, Colorado Springs, for plaintiffs-appellants.

Daniel, McCain, Brown, Wallace & Brubaker, LLC, Margaret R. Brubaker, Brighton, for defendant-appellant.

Karowsky Witwer Miller & Oldenburg, Jacqueline R. Johnson, Walker, Miller, Greeley, for intervenor-appellee.

Geoffrey T. Wilson, Denver, for amicus curiae Colorado Municipal League.

Opinion by Judge NEY.

Plaintiffs, Suzan Zaner and Ray Owens, brought this action to challenge a referendum election held by defendant, City of Brighton, to obtain voter approval for the transfer of Brighton's electric utility franchise from one utility to another. They maintained that the election was in violation of Colo. Const. art X, § 20, known as "The Taxpayer's Bill of Rights" (TABOR), an initiated constitutional amendment approved by the electors in the 1992 general election. From a summary judgment entered in favor of Brighton, plaintiffs appeal. We affirm.

On May 4, 1993, the city council of Brighton passed a non-emergency ordinance which granted conditional approval for the transfer of the electric utility franchise from Public Service Company to United Power, Inc. Brighton enacted the ordinance as a non-emergency measure to preserve the People's right of referendum.

On June 3, 1993, registered electors who opposed the ordinance filed a referendum petition with the Brighton city clerk. Twelve days later, the city council affirmed its approval of the ordinance and passed a resolution to submit the measure to a vote. In reliance on the election provisions found at § 1–41–101, et seq., C.R.S. (1994 Cum.Supp.) and § 1–40–127(2), C.R.S. (1994 Cum.Supp.), the city council scheduled a special election for August 3, 1993.

On July 22, 1993, plaintiffs filed this action challenging the election, asserting that the election was in violation of TABOR. On August 3, 1993, the voters approved the transfer of the utility franchise.

On October 25, 1993, the parties stipulated that the material facts of this case were not in dispute and requested that the trial court enter judgment on cross-motions for summary judgment. The trial court entered summary judgment in favor of Brighton on December 8, 1993.

Plaintiffs appeal the trial court's judgment validating Brighton's special election. They assert that Brighton's election was prohibited by TABOR and seek to set aside its results.

Plaintiffs contended that, by virtue of its being scheduled to occur in August 1993, Brighton's election was prohibited by Colo. Const. art. X, § 20(3)(a), which provides:

> Ballot issues shall be decided in a state general election, biennial local district election, or on the first Tuesday in November of odd-numbered years.

"Ballot issue" is defined in Colo. Const. art. X, § 20(2)(a), as "a non-recall petition or referred measure in an election."

Moreover, plaintiffs argued that § 1–41–101, et seq., C.R.S. (1994 Cum.Supp.), which was adopted to clarify TABOR, is unconstitutional because TABOR's election provisions are unambiguous and the statute conflicts with them.

The statute contains a legislative declaration that TABOR is ambiguous. Section 1–41–101, C.R.S. (1994 Cum.Supp.). Section 1–41–103(4), C.R.S. (1994 Cum.Supp.) provides that, as used in that section, "local government matters arising under section 20 of

article X of the state constitution" include tax, debt, and revenue changes.

Section 1–41–103(5), C.R.S. (1994 Cum. Supp.) provides for local ballot issue elections in odd-numbered years:

> The submission of issues at elections in November of odd-numbered years in accordance with this section, or at other elections as provided in section 20(3)(a) of article X of the state constitution, *shall not be deemed the exclusive method of submitting issues to a vote of the people,* and nothing in this section shall be construed to repeal, diminish, or otherwise affect in any way the authority of local governments to hold issue elections *in accordance with other provisions of law.* (emphasis added)

Brighton selected its election date for the referred franchise measure in accordance with § 1–40–127(2), C.R.S. (1994 Cum.Supp.). That provision is an implementation statute of the referendum powers reserved by the People. It provides that:

> If the ordinance or any part thereof is not repealed, the legislative body shall forthwith publish the measure as other ordinances are published if no publication has theretofore been made and shall submit the measure to a vote of the registered electors at a regular or special election held not less than sixty days and not more than one hundred fifty days after the date the petition is filed unless otherwise required by the state constitution.

■ The trial court concluded that the scope of TABOR is limited to fiscal issues such as tax, revenue, and spending. Hence, it determined that, since the election provisions contained in Colo. Const. art. X, § 20(3)(a), apply only to fiscal ballot issues, Brighton's election concerning the transfer of a utility franchise was proper and did not violate TABOR's election provisions. We agree.

## I.

## AMBIGUITY OF TABOR

Plaintiffs argue that the election provisions of TABOR are clear and unambiguous and that the trial court erred in finding the provisions ambiguous. We disagree.

■ Ambiguity exists in a statute when the language used is reasonably susceptible of more than one meaning. *Danielson v. Castle Meadows, Inc.,* 791 P.2d 1106 (Colo. 1990).

We agree with plaintiffs' contention that if the election provisions are read in isolation they clearly and unambiguously control election dates for ballot issues regardless of subject matter.

■ However, "[t]here is no more likely way to misapprehend the meaning of language—be it in a constitution, a statute, a will or a contract—than to read the words literally, forgetting the object which the document as a whole is meant to secure." *In re Estate of Hill,* 713 P.2d 928, 930 (Colo.App. 1985) (quoting *Central Hanover Bank & Trust Co. v. Commissioner of Internal Revenue,* 159 F.2d 167, 169 (2d Cir.1947)). To construe a statute properly, one must read and consider the statute as a whole in order to give "consistent, harmonious, and sensible effect to all its parts." *Vail Associates v. Board of Assessment Appeals,* 765 P.2d 593, 595 (Colo.App.1988).

Accordingly, viewing the election provisions in the context of the entire amendment, a reasonable person could read the provisions and conclude that only elections for fiscal matters are controlled by TABOR. And, this interpretation is at least as reasonable as that which results from reading the provisions in isolation.

■ Hence, as the election provisions are reasonably susceptible of more than one meaning, the trial court did not err in holding that they are ambiguous.

Plaintiffs, however, argue that the election provisions must be read in isolation because they are a separate subject under TABOR.

Although all initiated measures after the 1994 General Election must pertain to a single subject, Colo. Const. art. 5, § 1, and Colo. Const. art. XIX, § 2, subsection 3, at the time of the passage of TABOR, a constitutional amendment could contain more than

one subject. *Coopersmith v. Denver,* 156 Colo. 469, 399 P.2d 943 (1965).

As we read TABOR, each of its provisions controls government power to tax, spend, incur debt, and secure revenue. *See Bickel v. City of Boulder,* 885 P.2d 215 (Colo.1994).

In support of their argument that TABOR is a multi-subject amendment and that its election provisions constitute one of its multiple subjects, the single example given by plaintiffs is Colo. Const. art. X, § 20(9). That provision, titled "State Mandates," provides that, with limited exceptions, a local district may reduce or end its subsidy to any program delegated to it by the General Assembly for administration.

However, although that portion of TABOR deals with state mandates, which are not addressed in TABOR's other provisions, we conclude that it does not introduce a separate subject into TABOR. Rather, it deals with shifting expenditures from local governments to the state and, as such, is consistent with TABOR's other provisions which concern fiscal issues.

Our conclusion that the election provisions are ambiguous is consistent with the General Assembly's finding that the application of TABOR's election provisions is ambiguous.

Section 1–41–101, C.R.S. (1994 Cum.Supp.) contains the General Assembly's legislative declaration that TABOR is unclear as to what issues can be submitted to a vote in the odd-year election, that state and local election officials needed guidance as to how to administer the November 1993 election, and that the General Assembly should exercise its legislative power to resolve the ambiguities in TABOR in a manner consistent with its terms.

▪ The General Assembly's construction of TABOR made shortly after its adoption is to be given great weight. *See City Council v. Board of County Commissioners,* 33 Colo. 1, 77 P. 858 (1904).

## II.

## INTERPRETATION OF TABOR'S ELECTION PROVISIONS

Plaintiffs contend that the restrictive election provisions found in Colo. Const. art. X, § 20(3)(a) apply to all ballot issues, fiscal and non-fiscal, except recall petitions. In our view, however, such an interpretation would not be consistent either with the terms of the amendment as a whole or with the intent of the electorate in adopting the amendment as it was presented to it.

▪ The Constitution must be construed as a whole. *De'Sha v. Reed,* 194 Colo. 367, 572 P.2d 821 (1977). Each provision "should be construed if possible to avoid any conflict between the different parts of the [C]onstitution." *Colorado Common Cause v. Bledsoe,* 810 P.2d 201, 207 (Colo.1991). *See also Dempsey v. Romer,* 825 P.2d 44 (Colo.1992) (if language of a constitutional provision conveys a clear and definite meaning without absurdity or internal contradiction, any construction of the language must give full effect to that language).

▪ A conflict among constitutional provisions or between a constitutional provision and a statute exists when "one provision authorizes what the other forbids or forbids what the other authorizes." *Bickel v. City of Boulder, supra,* at 228–29. *See In re Interrogatories on House Bill 1078,* 189 Colo. 1, 536 P.2d 308 (1975).

Viewing TABOR's election provisions in light of the amendment as a whole, and reading TABOR in conjunction with § 1–41–101, et seq., C.R.S. (1994 Cum.Supp.), we conclude that TABOR's election provisions apply only to those fiscal ballot issues which are "local government matters arising under [TABOR]" as set out in § 1–41–103(4), C.R.S. (1994 Cum.Supp.).

This interpretation harmonizes TABOR with other constitutional provisions by minimizing the conflict between TABOR's election provisions and the following Constitutional provisions: Colo. Const. art. V, § 1(4) and § (9); Colo. Const. art. XX, § 4(2), § 5 and § 6.

▪ Further, this result permits TABOR to "supersede conflicting state constitutional[ ] ... provisions" to the extent necessary while preserving such constitutional provisions to the greatest degree possible. Such

an outcome is favored by the rules of construction. *Colorado Common Cause v. Bledsoe, supra.*

Our supreme court has characterized TABOR as imposing limits on the spending and taxing powers of state and local governments and has determined that TABOR's aim is to restrain the growth of government in the specific context of budget, spending, and taxation. *Bickel v. City of Boulder, supra.*

Hence, our conclusion here is consistent with *Bickel* and is based upon the following analyses which resolve the ambiguities present in TABOR.

### A.

Plaintiffs contend that TABOR's other provisions confirm that its election provisions encompass non-fiscal as well as fiscal ballot issues. We disagree.

TABOR is replete with references to fiscal matters such as tax, spending, and revenue. Indeed, its title, "The Taxpayer's Bill of Rights," reveals that the amendment's aim is to preserve the rights of the citizens in their capacity as taxpayers.

According to the plaintiffs' construction of TABOR, the only provisions that would refer to non-fiscal matters are the election provisions. However, we reject this construction because all of TABOR's provisions contain subject matter which is fiscal in nature.

Thus, we conclude that TABOR's other provisions do not support plaintiffs' contention.

### B.

If the election provisions are construed, as plaintiffs contend, to reach non-fiscal as well as fiscal matters, they appear inconsistent with TABOR's election notice provisions set out in Colo. Const. art. X, § 20(3)(b). The election notice provisions refer exclusively to fiscal matters and the language contained therein indicates that the amendment does not contemplate non-fiscal ballot issues.

Thus, to interpret these provisions harmoniously, we construe Colo. Const. art. X, § 20(3)(a), to apply only to elections concerning fiscal ballot issues which appear in § 1–

41–103(4), C.R.S. (1994 Cum.Supp.). *See Colorado Common Cause v. Bledsoe, supra.*

### C.

Plaintiffs further argue that TABOR's proponents' placement of the amendment in the revenue article of the Constitution does not limit the scope of the amendment. We disagree.

■ The courts are bound to give effect to the expression of the will of the people as contained in constitutional amendments adopted by them. *Submission of Interrogatories on Senate Bill 93–74,* 852 P.2d 1 (Colo. 1993).

■ TABOR appears in the revenue article of the Colorado Constitution and limits the power of state and local governments to raise taxes and increase debt without voter approval. Its placement is an expression of the will of the People and shapes the meaning of the amendment.

Thus, we conclude that TABOR's location may be utilized to determine its scope and that its placement in the revenue article supports the conclusion that its election provisions concern only fiscal matters.

### D.

■ We look to TABOR's ballot title and submission clause to ascertain the intent of the voters and disagree with the plaintiffs that these are not relevant to an interpretation of TABOR because they were not drafted by the proponents.

The record does not indicate that the ballot title and submissions clause prepared by the title setting board was challenged by either TABOR's proponents or opponents.

■ The aim in construing a constitutional amendment is to ascertain and give effect to the intent of those who adopted it. And, when the amendment is adopted by popular vote, courts must "seek to determine what the people believed the amendment to mean when they accepted it as their fundamental law." *Urbish v. Lamm,* 761 P.2d 756, 760 (Colo.1988).

Courts may "rely upon the general rules of statutory construction when interpreting citizen-initiated measures." *Bickel v. City of Boulder, supra.* Thus, we may properly consider the ballot title as an aid to discerning the intent of the voters.

In preparing a ballot title for TABOR, the title setting board had a duty to comply with § 1–40–101(2), C.R.S. (1980 Repl.Vol. 1B). That statute, which was subsequently amended and relocated to § 1–40–105(4), C.R.S. (1994 Cum.Supp.) and § 1–40–106(1) and (3), C.R.S. (1994 Cum.Supp.), provided:

> The title for the proposed law or constitutional amendment, which *shall correctly and fairly express the true intent and meaning thereof,* together with the ballot title, submission clause, and summary, shall be completed within two weeks after the first meeting of the [title setting] board.
>
> . . . .
>
> Ballot titles shall be brief[ ] . . . and . . . shall unambiguously state the principle of the provision sought to be added, amended, or repealed. (emphasis added)

Section 1–40–101(3), C.R.S. (1980 Repl.Vol. 1B), which was in effect at the time TABOR was adopted, offered proponents an opportunity to challenge a ballot title set by the board:

> If any persons presenting such initiative petition are not satisfied with the titles, submission clause, and summary thus provided and claim that they are unfair *or that they do not fairly express the true meaning and intent of the proposed law or constitutional amendment,* . . . they may file a motion with the secretary of state for a rehearing which shall be passed upon by the board within forty-eight hours thereafter. . . . (emphasis added)

The statute further provided for review by the supreme court if the motion for rehearing was overruled by the board. At the time of TABOR's adoption, similar provisions were available to non-proponents. Section 1–40–102(3), C.R.S. (1980 Repl.Vol. 1B).

Both TABOR's proponents and its opponents had a duty to ensure that its provisions were not substantially broader than its ballot title because the title was to be viewed by and relied upon by the voters in the polling booth and because of the requirements which were then contained in § 1–40–101(2), C.R.S. (1980 Repl.Vol. 1B). *See In re Second Initiated Constitutional Amendment,* 200 Colo. 141, 613 P.2d 867 (1980) (ballot title must correctly and fairly express the intent and meaning of the proposed measure); *Dye v. Baker,* 143 Colo. 458, 354 P.2d 498 (1960) (submission clause must succinctly advise voters of the measure submitted and must not mislead the voter). Accordingly, each side was obliged to temper its wish for a ballot title so favorably phrased that a voter would reflexively approve or disapprove the measure.

As no challenges were made to the ballot title, we presume that the proponents were satisfied that the ballot title fairly expressed the true meaning and intent of TABOR. Therefore, we may consider the ballot title as an additional aid to discern the intent of the voters and to interpret properly the scope of TABOR's election provisions.

TABOR's ballot title and submission clause read:

> Shall there be an amendment to the Colorado Constitution to require voter approval for certain state and local government tax revenue increases and debt; to restrict property, income, and other taxes; to limit the rate of increase in state and local government spending; *to allow additional initiative and referendum elections;* and to provide for the mailing of information to registered voters. (emphasis added)

The language of the ballot title and submission clause indicates that the amendment expands the initiative and referendum powers of the People. However, plaintiffs' construction of TABOR's election provisions would restrict the People's ability to hold initiated or referred elections.

The People of Colorado have reserved to themselves the rights of initiative and referendum in Colo. Const. art V, § 1. This reservation of power in the People is fundamental to our state's republican form of government and "must be liberally construed

in favor of the right of the people to exercise it." *Margolis v. District Court,* 638 P.2d 297, 302 (Colo.1981). One of the purposes of the initiative and referendum powers is "to expeditiously permit the total and free exercise of legislative power by the people, except in rare circumstances." *Margolis v. District Court, supra,* at 303.

The election provisions, as construed by plaintiffs, would require the postponement of all initiative and referendum elections; such delay does not expeditiously permit the free exercise of legislative power by the People. Such result militates against our holding that TABOR's election provisions should apply to non-fiscal ballot issues and fiscal ballot issues that are not listed in § 1–41–103(4), C.R.S. (1994 Cum.Supp.).

### E.

▮ The legislative council's analysis of the amendment is also helpful in discerning whether TABOR's scope is limited to fiscal ballot issues only.

Although the legislative council's interpretation of a proposed amendment is not binding, it "provides important insight into the electorate's understanding of the amendment when it was passed." *Carrara Place, Ltd. v. Arapahoe County Board of Equalization,* 761 P.2d 197, 203 (Colo.1988).

The legislative council's analysis divides TABOR into the following categories for purposes of analysis: voter approval of tax increases/debt; government spending limits; local revenue limits; prohibited taxes; taxpayer refunds; emergency taxes, emergency reserves; election procedures, ballot information; state mandates; and assessment of property. Each of these categories concerns substantive fiscal matters, election dates, and procedures related to fiscal ballot issues. This theme is repeated in the council's assessment of the impact of the proposal:

> State and local government would be restricted to making changes in tax policy and the tax code that decrease taxes. All other changes would require voter approval. State and local governments would not be able to issue new revenue bonds or other multi-year financial obligations without voter approval. The amendment also states that "other limits on [government]

revenue, spending, and debt may be weakened only by future voter approval." [Art. X, § 20(1)] This apparently means that, whether such limits were created by local ordinance, state law, or through an election, weakening those limits would require voter approval.

Hence, the legislative council's interpretation of TABOR also supports our conclusion that the electorate understood the amendment to encompass only fiscal matters such as tax, spending, and revenue. Construing the amendment in this fashion effectuates the electorate's intent in enacting TABOR.

We conclude that the scope of TABOR is limited to fiscal matters. We decline to read the election provisions in isolation and thereby denude them of the meaning conferred upon them by the context in which they appear.

### III.

### CONSTITUTIONALITY OF § 1–41–101, ET SEQ., C.R.S. (1994 CUM.SUPP.)

▮ Plaintiffs contend that the trial court erred in holding that § 1–41–101, et seq., C.R.S. (1994 Cum.Supp.) was constitutional. We disagree.

▮ A statute is presumed to be constitutional. Section 2–4–201(1)(a), C.R.S. (1980 Repl.Vol. 1B); *Dempsey v. Romer, supra.* A party "asserting the unconstitutionality of any statute has the burden of proving such assertion beyond a reasonable doubt." *People v. Wilhelm,* 676 P.2d 702, 704 (Colo. 1984).

The challenged statute properly implements TABOR's election provisions based on the ambiguity present in the provisions. As the plaintiffs have failed to overcome the presumption of constitutionality of the statute, we perceive no error in the trial court's ruling.

Plaintiffs further contend that the General Assembly's enactment of the challenged statute is unconstitutional because TABOR is self-executing and the statute detracts from the rights granted by TABOR. We disagree.

TABOR's stated "preferred interpretation" is that which "reasonably restrain[s] most the growth of government." Colo. Const. art. X, § 20(1). TABOR "supersede[s] con-

flicting state constitutional, state statutory, charter, or other state or local provisions." Colo. Const. art. X, § 20(1).

■ Legislation which implements and furthers the purpose of a self-executing initiated constitutional provision is permitted. However, legislation which "directly or indirectly limits, curtails or destroys the rights given by those provisions is invalid as violative of the rights reserved by the people to themselves." *Common Cause v. Anderson,* 178 Colo. 1, 5, 495 P.2d 220, 222 (1972).

Despite the title of "The Taxpayer's Bill of Rights," the amendment is not a true bill of rights in the sense of being a grant of rights to the people. *Bickel v. City of Boulder, supra.* Rather, TABOR's requirement of electoral approval for tax, spending, and revenue measures, is "properly viewed as a limitation on the power of the people's elected representatives." *Bickel v. City of Boulder, supra,* at 226.

By restricting TABOR's scope to fiscal ballot issues, the General Assembly complied with its "preferred interpretation" in that it preserved the People's ability to limit the power of their elected representatives and thereby "restrain most the growth of government."

As § 1–41–101, et seq., C.R.S. (1994 Cum. Supp.) implements TABOR's provisions, furthers the amendment's purpose, and does not curtail any rights conferred on the People by TABOR, we reject the plaintiffs' contention that the statute is unconstitutional because TABOR is self-executing.

We conclude that, as Brighton's special election concerned a ballot issue to which § 1–41–103(4), C.R.S. (1994 Cum.Supp.) did not apply, it did not fall within the scope of TABOR's election provisions. Accordingly, the special election was properly held in compliance with § 1–41–101, et seq., C.R.S. (1994 Cum.Supp.) and § 1–40–127(2), C.R.S. (1994 Cum.Supp.).

The judgment is affirmed.

JONES and DAVIDSON, JJ., concur.