Jason M. BEINOR, Petitioner,

v.

**INDUSTRIAL CLAIM APPEALS OF-
FICE of the State of Colorado and
Service Group, Inc., Respondents.**

No. 10CA1685.

Colorado Court of Appeals,
Div. VII.

Aug. 18, 2011.

Jason M. Beinor, Pro Se.

John W. Suthers, Attorney General, John August Lizza, First Assistant Attorney General, Denver, Colorado, for Respondent Industrial Claim Appeals Office.

Opinion by Judge RICHMAN.

This unemployment compensation benefits case raises a question of first impression: whether an employee terminated for testing positive for marijuana in violation of an employer's zero-tolerance drug policy may be denied unemployment compensation benefits even if the worker's use of marijuana is "medical use" as defined in article XVIII, section 14 of the Colorado Constitution. We conclude the benefits were properly denied in this case.

Claimant, Jason M. Beinor, appeals the final order of the Industrial Claim Appeals Office (Panel) disqualifying him from unemployment compensation benefits under section 8–73–108(5)(e) (IX.5), C.R.S.2010

(disqualification for the presence of "not medically prescribed controlled substances" in worker's system during working hours). He contends that he is entitled to benefits because he legally obtained and used marijuana under the Colorado Constitution for a medically-documented purpose and consequently had a right to consume the drug. We conclude that although the medical certification permitting the possession and use of marijuana may insulate claimant from state criminal prosecution, it does not preclude him from being denied unemployment benefits based on a separation from employment for testing positive for marijuana in violation of an employer's express zero-tolerance drug policy. We therefore affirm the Panel's decision.

## I. Background

Claimant was employed by Service Group, Inc. (employer) as an operator assigned to sweep the 16th Street Mall in Denver with a broom and dustpan. He was discharged in February 2010 for violating employer's zero-tolerance drug policy after testing positive for marijuana in a random drug test ordered by employer. Employer's policy states: "[I]f a current employee is substance tested for any reason . . . and the results of the screening are positive for . . . illegal drugs, the employee will be terminated."

Claimant contends, and employer does not dispute, that he obtained and used the marijuana for severe headaches, as recommended by a physician pursuant to article XVIII, section 14 of the Colorado Constitution, which provides an exemption from state criminal prosecution to individuals issued a "registry identification card" to use marijuana for medical purposes. Colo. Const. art. XVIII, § 14(2)(b).

In pertinent part, the amendment provides:

[I]t shall be an exception from the state's *criminal* laws for any patient or primary care-giver in lawful possession of a registry identification card to engage or assist in the medical use of marijuana, except as otherwise provided in subsections (5) and (8) of this section.

Colo. Const. art. XVIII, § 14(2)(b) (emphasis added). The amendment also specifies:

A patient may engage in the medical use of marijuana, with no more marijuana than is medically necessary to address a debilitating medical condition. A patient's medical use of marijuana, within the following limits, is lawful:

(I)     No more than two ounces of a usable form of marijuana; and

(II)   No more than six marijuana plants, with three or fewer being mature, flowering plants that are producing a usable form of marijuana.

Colo. Const. art. XVIII, § 14(4)(a).

Claimant asserts that his use and possession of marijuana was therefore legal. A deputy initially denied claimant's request for unemployment benefits, but a hearing officer reversed that decision, finding that claimant was not at fault for his separation from employment because there was "no reliable evidence to suggest that . . . claimant was not eligible for a medical marijuana license" or that his use of the substance negatively impacted his job performance. Moreover, the hearing officer noted that "claimant has a state constitutional right to use marijuana."

Although claimant did not produce a registry identification card, he did produce a physician certification form, contending that he had not yet been provided with the registry card. Employer did not contest his eligibility to receive the registration card. Nor did employer argue that the use of marijuana negatively impacted his job performance.

On employer's appeal, the Panel disagreed and set aside the hearing officer's order. Relying on a precedential case decided by the entire Panel, the Panel here concluded that article XVIII, section 14 of the Colorado Constitution does not create an exception to section 8–73–108(5)(e) (IX.5), which disqualifies from benefits an employee who tests positive for the presence of "not medically prescribed controlled substances" in his or her system "during working hours." The Panel accordingly disqualified claimant from receiving benefits pursuant to section 8–73–108(5)(e)(IX.5). Claimant now appeals.

## II. Analysis

Claimant contends that the Panel erred in setting aside the hearing officer's decision because the Colorado Constitution protects his marijuana use. He argues, essentially, that his constitutional right to "medical use" of marijuana was violated by the application of the disqualifying provision to his situation and the Panel's consequent denial of his request for unemployment benefits. He also argues that the Panel should have recognized that employer's categorization of marijuana with other more harmful illegal substances is inappropriate and "prejudicial" because marijuana can remain in one's system for several days after its use and long after it has lost its influence, as demonstrated by the lack of evidence that claimant's use of marijuana negatively affected his job performance.

Although claimant appears pro se, we liberally interpret his brief and discern that his appeal raises three separate issues: (1) whether the statutory disqualification in section 8–73–108(5)(e) (IX.5) applies to claimant's case; (2) if so, whether the statute violates a constitutional right of claimant; and (3) whether the record was sufficient to support the Panel's decision.

We are not persuaded that the statute was misapplied in this case or that any of claimant's rights under article XVIII, section 14 of the Colorado Constitution were violated. Because the record supports the Panel's determination, we affirm it.

### A. Application of the Disqualification Provision

■ Under Colorado's unemployment compensation provisions, an employee may be disqualified from receiving unemployment compensation benefits if a separation from employment occurs because of

[t]he presence in an individual's system, during working hours, of *not medically prescribed controlled substances, as defined in section 12–22–303(7), C.R.S.,* ... as evidenced by a drug ... test administered pursuant to a statutory or regulatory requirement or a previously established, written drug ... policy of the employer and conducted by a medical facility or laboratory licensed or certified to conduct such tests.

§ 8–73–108(5)(e) (IX.5) (emphasis added); *see Slaughter v. John Elway Dodge Sw./AutoNation,* 107 P.3d 1165, 1170 (Colo.App. 2005) ("[Section] 8–73–108(5)(e) (IX.5) ... provides that an employer shall not be charged for unemployment benefits when it has a previously established written drug policy and terminates an employee as the result of a drug test showing the presence of marijuana in the employee's system during working hours."). A "controlled substance" is defined in relevant part as "a drug, substance, or immediate precursor ... including cocaine, marijuana, [and] marijuana concentrate." *See* § 12–22–303(7), C.R.S.2010 (incorporating the definition of "controlled substance" set forth in section 18–18–102(5), C.R.S.2010).

As noted above, the disqualification from receiving unemployment benefits is triggered if an employee tests positive for the presence of a controlled substance that is "not medically prescribed." § 8–73–108(5)(e) (IX.5). Underlying claimant's argument is an assumption that his authorization to use medical marijuana is equivalent to a medical prescription. This assumption is inaccurate.

Under article XVIII, section 14, a physician does not *prescribe* marijuana, but may only provide "written documentation" stating that the patient has a debilitating medical condition and might benefit from the medical use of marijuana. *See* Colo. Const. art. XVIII, § 14(2)(c)(II). Indeed, a physician's inability to prescribe marijuana under Colorado law is reflected in the very physician certification upon which claimant relies to legally consume marijuana. That document specifies that "[t]his assessment is *not* a prescription for the use of marijuana" (emphasis added).

Moreover, federal law, to which Colorado physicians are subject, requires a practitioner prescribing controlled substances to be registered with the Drug Enforcement Administration (DEA). *See* 21 C.F.R. § 1301.11 (2009). Such registration for the prescription of controlled substances can only be obtained for Schedule II through V controlled substances. *See* 21 C.F.R. § 1301.13

(2010). Marijuana, in contrast, remains a Schedule I controlled substance under the applicable federal· statute and consequently cannot be prescribed. 21 U.S.C. § 812(c) (1999); *see United States v. Oakland Cannabis Buyers' Coop.*, 532 U.S. 483, 491, 121 S.Ct. 1711, 149 L.Ed.2d 722 (2001) ("In the case of the Controlled Substances Act, the statute reflects a determination that marijuana has no medical benefits worthy of an exception.... Whereas some other drugs can be dispensed and prescribed for medical use, the same is not true for marijuana. Indeed, for purposes of the Controlled Substances Act, marijuana has 'no currently accepted medical use' at all.") (citation omitted).

The federal prohibition against prescribing marijuana was reiterated by the Office of National Drug Control Policy in 1997 when it issued a notice mandating that enforcement of federal drug laws would remain in effect despite California's and Arizona's passage of medical marijuana provisions, because "prescribing Schedule I controlled substances is not consistent with the 'public interest' ... and will lead to administrative action by the [DEA] to revoke the practitioner's registration." 62 Fed. Reg. 6164, 6164 (Feb. 11, 1997); *see also Conant v. Walters*, 309 F.3d 629, 633 (9th Cir.2002) (noting that under the federal policy "physicians who 'intentionally provide their patients with oral or written statements in order to enable them to obtain controlled substances in violation of federal law ... risk revocation of their DEA prescription authority'") (quoting joint policy letter of Department of Justice and Department of Health and Human Services). Under this policy,

> the federal government may: 1) prosecute any physician who prescribes or recommends marijuana to patients; 2) prosecute any patient who uses prescribed marijuana; 3) revoke the DEA registration numbers of any physician who prescribes or recommends marijuana to patients; 4) exclude any physician who prescribes or recommends marijuana to patients from the Medicaid and Medicare programs; and 5) enforce all federal sanctions against physicians and patients.

*Pearson v. McCaffrey*, 139 F.Supp.2d 113, 116 (D.D.C.2001).

Although the Department of Justice has indicated it may not prosecute "individuals with cancer or other serious illnesses who use marijuana as part of a recommended treatment regimen consistent with applicable state law, or those caregivers in clear and unambiguous compliance with existing state law who provide such individuals with marijuana," the Department nonetheless remains "committed to the enforcement of the Controlled Substances Act in all States." Memorandum from Deputy ·Attorney General David W. Ogden to Selected United States Attorneys, Investigations and Prosecutions in States Authorizing the Medical Use of Marijuana (Oct. 19, 2009), *available at* http:// blogs.usdoj.gov/blog/archives/192. In a recent memorandum to the Colorado Attorney General, the United States Attorney for Colorado reiterated the Department's position as set forth in the Ogden memorandum. Memorandum from United States Attorney John F. Walsh to Attorney General John Suthers (Apr. 26, 2011), *available at* http:// extras.mnginteractive.com/live/media/site36/ 2011/0427/20110427_121943_pot.pdf. Consequently, the policies expressed by the Office of National Drug Control Policy remain in effect.

In addition, we give consideration to the opinion of Colorado's Attorney General that under Colorado's medical marijuana amendment "no such prescription is contemplated." *See* Applicability of State Sales Tax to the Purchase and Sale of Medical Marijuana, Colo. Att'y Gen. Formal Op. No. 09–06 (Nov. 16, 2009); *see also Colorado Common Cause v. Meyer*, 758 P.2d 153, 159 (Colo.1988) ("Since the Attorney General's opinion is issued pursuant to statutory duty, the opinion is obviously entitled to respectful consideration as a contemporaneous interpretation of the law by a governmental official charged with the responsibility of such interpretation.").

We conclude that the medical use of marijuana by an employee holding a registry card under amendment XVIII, section 14 is not pursuant to a prescription, and therefore does not constitute the use of "medically

prescribed controlled substances" within the meaning of section 8–73–108(5)(e)(IX.5). Accordingly, the presence of medical marijuana in an individual's system during working hours is a ground for a disqualification from unemployment benefits under that section.

### B. Interpretation of Medical Marijuana Amendment

■ Claimant also argues that we should reinstate the hearing officer's conclusion that "claimant has a constitutional right to use marijuana" and therefore is not at fault for his separation from employment. The Panel, in setting aside the hearing officer's decision, concluded that the constitutional provisions "address exceptions to state criminal laws" and disagreed with the hearing officer's inferences regarding the interplay of the unemployment compensation act and the constitutional amendment.

On appeal, claimant contends that the basis for disqualification set forth in section 8–73–108(5)(e) (IX.5) should not apply to him because he may legally obtain and consume marijuana as a "medical marijuana" user. We are not persuaded that the constitutional amendment provides the broad protections claimant asserts or broadly grants an unlimited right to use marijuana, and we decline to hold the disqualification provision unconstitutional under article XVIII, section 14.

■ When interpreting constitutional provisions enacted by voter referendum, it is this court's "duty ... to give effect to the will of the people." *Washington Cnty. Bd. of Equalization v. Petron Dev. Co.,* 109 P.3d 146, 150 (Colo.2005). In so doing, "we afford the language of constitutions and statutes their ordinary and common meaning; we ascertain and give effect to their intent." *Id.* at 149. Further, "[w]e construe statutory and constitutional provisions as a whole, giving effect to every word and term contained therein, whenever possible." *Bd. of Cnty. Comm'rs v. Vail Assocs., Inc.,* 19 P.3d 1263, 1273 (Colo.2001). Nor can we add or subtract language from the express words of the amendment. *See Turbyne v. People,* 151 P.3d 563, 567 (Colo.2007) ("We do not add words to the statute or subtract words from it."). "Where the language of the Constitu-

tion is plain and its meaning clear, that language must be declared and enforced as written." *Colo. Ass'n of Pub. Emps. v. Lamm,* 677 P.2d 1350, 1353 (Colo.1984).

As noted above, since passage of the medical marijuana amendment, the Colorado Constitution expressly provides that "it shall be an exception from the state's *criminal* laws for any patient or primary care-giver in lawful possession of a registry identification card to engage or assist in the medical use of marijuana, except as otherwise provided in subsections (5) and (8) of this section." Colo. Const. art. XVIII, § 14(2)(b) (emphasis added). Although subsection (4) of the amendment provides more generally that "[a] patient may engage in the medical use of marijuana, with no more marijuana than is medically necessary to address a debilitating condition," we do not read this as creating a broader constitutional right than exemption from prosecution. Because subsection (4) also provides specific limits for the quantity of marijuana and the number of marijuana plants that may be possessed, we understand the purpose of this subsection as setting the limits beyond which prosecution is not exempted, and not the creation of a separate constitutional right.

In addition to placing quantity limits on possession of medical marijuana, it is also apparent that the constitutional amendment was not intended to create an unfettered right to medical use of marijuana. The amendment expressly prohibits the medical use of marijuana in a way that endangers the health or well-being of any person. Colo. Const. art. XVIII, § 14(5)(a)(I). It also prohibits the medical use of marijuana in plain view, or in a place open to the general public. *Id.* § 14(5)(a)(II).

Subsection (8) of the amendment also provides that the General Assembly shall define the terms and enact legislation to implement the amendment. In response, in 2001, the General Assembly enacted section 18–18–406.3, C.R.S.2010, which established the criminal penalties for violation of the prohibitions contained in the amendment. In enacting this legislation, the General Assembly

declared the purpose of the amendment as follows:

(b) [The amendment] *creates limited exceptions to the criminal laws of this state* for patients, primary care givers, and physicians concerning the medical use of marijuana by a patient to alleviate an appropriately diagnosed debilitating medical condition;

. . .

(f) [The amendment] sets forth the lawful limits on the medical use of marijuana;

. . .

(h) In interpreting the provisions of [the amendment], the general assembly . . . has attempted to give the . . . words of the constitutional provision their plain meaning;

(i) This section reflects the considered judgment of the general assembly regarding the meaning and implementation of the provisions of [the amendment].

§ 18–18–406.3(1), C.R.S.2010 (emphasis added).

■ Thus, contrary to claimant's interpretation, the General Assembly understood Colorado's medical marijuana amendment to have created an exception to criminal prosecution, and not to be a grant to medical marijuana users of an unlimited constitutional right to use the drug in any place or in any manner. The General Assembly's construction of an initiated constitutional amendment made shortly after its adoption is to be given great weight. *See Zaner v. City of Brighton,* 899 P.2d 263, 267 (Colo.App.1994), *aff'd,* 917 P.2d 280 (Colo.1996).

■ Moreover, the amendment specifically provides: "Nothing in this section shall require any employer to accommodate the medical use of marijuana in any work place." Colo. Const. art. XVIII, § 14(10)(b). The "medical use of marijuana" is broadly defined in the amendment to mean "the acquisition, possession, production, use or transportation of marijuana or paraphernalia related to the administration of such marijuana to address the symptoms or effects of a patient's debilitating medical condition." *Id.* § 14(1)(b). Thus, the Colorado Constitution does not give medical marijuana users the unfettered right to violate employers' policies and practices regarding use of controlled substances.

To interpret the medical marijuana amendment as claimant suggests—as a blanket "right to use marijuana as long as it is recommended by a physician and registered with the state"—would require us to disregard the amendment's express limitations protecting only against criminal prosecution and allowing employers not to accommodate the use of marijuana in the workplace, as well as the General Assembly's interpretation of the amendment. We decline to do so.

■ Our interpretation is consistent with other cases that have examined the scope of medical marijuana provisions in this and other states. Colorado has already recognized that the medical marijuana amendment to Colorado's Constitution is not limitless. Rather, as a division of this court noted, because all provisions and language in the amendment must be given their full force and effect, "primary care-giver" under the provision does not encompass everyone who may "supply marijuana for medical use," but is instead limited to those who "do more than merely supply a patient who has a debilitating medical condition with marijuana." *People v. Clendenin,* 232 P.3d 210, 212, 214 (Colo.App.2009). In addition, a prohibition in a parenting plan against using medical marijuana while exercising parenting time did "not constitute a restriction of parenting time." *In re Marriage of Parr,* 240 P.3d 509, 511 (Colo.App.2010).

We also emphasize that the issue presented here is whether unemployment compensation benefits may be denied due to the presence of "not medically prescribed controlled substances" in a tested employee. We are not deciding whether the amendment limits an employer from discharging an employee for using medical marijuana. Nonetheless, we note that in the context of wrongful termination cases, language similar to section 14(10)(b) ("Nothing in this section shall require any employer to accommodate the medical use of marijuana in any work place.") has been interpreted not to require employers to accommodate employees' off-site use of medical marijuana. *Roe v. TeleTech Cus-*

*tomer Care Mgmt. (Colo.), LLC,* 171 Wash.2d 736, 257 P.3d 586, 592–93 (2011).

We therefore conclude that the Panel did not err in determining that claimant was not shielded by Colorado's medical marijuana amendment from being at fault for his separation from employment and could be disqualified from receiving unemployment compensation benefits under section 8–73–108(5)(e)(IX.5).

## C.  Substantial Evidence

Claimant contends that the evidence did not establish that he violated employer's "previously established" policy regarding the use of drugs because the policy was unclear or did not apply to him.   He apparently refers to employer's policy which states:

> Employees who operate vehicles as part of their Service Group responsibilities must notify their supervisors or appropriate Company manager when they are taking prescription or non-prescription medication which contains a WARNING LABEL stating that use of that drug may impair their ability to safely operate machinery or vehicles.

It is undisputed that claimant did not operate any machinery or drive any vehicles for employer.   Therefore, he argues, because he was legally taking a drug, he was not obligated to advise employer of his use of marijuana and should not have been penalized for his positive drug test.

■ While claimant's "sweeping and panning" duties may have rendered the above-quoted employer's policy inapplicable, and absolved him from the obligation to notify his supervisor of his marijuana usage, we do not read that provision as precluding the Panel from finding that claimant was terminated under employer's zero-tolerance drug policy set forth above.   The separate zero-tolerance policy prohibits the presence of any "illegal drugs."   Although Colorado's medical marijuana provision may protect claimant from prosecution under Colorado's criminal laws, as noted above the amendment has no bearing on federal laws, under which marijuana remains an illegal substance.   *See* 21 U.S.C. §§ 802, 812, 841.

As employer's representative noted, the illegality of marijuana use under federal law made its presence in any worker's system inappropriate under employer's policy.   We therefore conclude that substantial evidence supports the Panel's conclusion that claimant's status as a "sweeper and panner" who was not required to alert his supervisor of his marijuana use did not render his termination inappropriate under employer's zero-tolerance drug policy.

■ Having determined that claimant was subject to employer's zero-tolerance drug policy and could be disqualified from benefits by section 8–73–108(5)(e) (IX.5), we turn to the evidence supporting the Panel's determination that claimant was not entitled to benefits because he had the presence of marijuana in his system.   "A decision of the [P]anel may not be set aside where there are findings of fact supported by substantial evidence."   *Colo. Div. of Emp't & Training v. Hewlett,* 777 P.2d 704, 707 (Colo.1989).

■ Claimant admitted he had used marijuana in the days preceding employer's drug test, and he does not dispute that marijuana was still in his system at the time of the testing.   Moreover, the laboratory report of the positive drug test results was introduced into evidence before the hearing officer.   *Cf. Sosa v. Indus. Claim Appeals Office,* 259 P.3d 558, —— (Colo.App.2011).   Claimant did not dispute the accuracy of the reported test results or the qualifications of the laboratory performing the test.   Thus, there was substantial evidence that claimant had a controlled substance in his system that was not medically prescribed.

Claimant also raises arguments concerning the properties of marijuana and its potency.   He first argues that marijuana should not be categorized as a "Schedule I substance" because other substances so categorized "have no medicinal value."   However, it is not within the power of this court to determine what substances should be included on Schedule I.   *United States v. Phifer,* 400 F.Supp. 719, 736 (E.D.Pa.1975) ("Congress has designated marijuana as a controlled substance and has listed it in Schedule I as such.   21 U.S.C. § 812(c) [ (Sched. I) ](c)(10).   Congress has

thus made the determination that, as a matter of law, marijuana is a controlled substance."), *aff'd*, 532 F.2d 748 (3d Cir.1976) (unpublished table decision).

He further contends that the trace amount of marijuana detected in his sample was insubstantial and he consequently was not "under the influence" of marijuana while at work. We need not address these arguments, however, for two reasons.

■■■ First, claimant was not denied benefits for being "under the influence" of marijuana at work. Section 8–73–108(5)(e)(VIII), C.R.S.2010, provides for disqualification when use of drugs results in "interference with job performance," but the denial of benefits to claimant was not based on this section. Second, although claimant discussed the level of marijuana reported in his drug test at the hearing, the hearing officer declined to consider claimant's statements because no expert addressed the meaning of the results or the effects due to the reported level of marijuana.

■■■ Because evidence as to the effect of the amount of marijuana detected in claimant was neither offered nor considered below, we may not address these contentions here. Like the Panel, we may not consider any factual assertions or documentation offered by claimant in support of his arguments in this appeal that he did not raise or present before the hearing officer, nor any arguments that were expressly rejected by the hearing officer as unsupported. *See* § 8–74–107(1), C.R.S.2010; *Huddy v. Indus. Claim Appeals Office*, 894 P.2d 60, 62 (Colo.App. 1995) (appellate court has no authority under section 8–74–107, C.R.S.2010, to consider supplemental evidence); *Goodwill Indus. v. Indus. Claim Appeals Office*, 862 P.2d 1042, 1047 (Colo.App.1993).

In our view, the evidence supports the Panel's determination that claimant was disqualified from benefits from his employment under section 8–73–108(5)(e) (IX.5). Because the Panel's decision is supported by substantial evidence in the record, we may not set the decision aside. *See* § 8–74–107(6), C.R.S. 2010; *Tilley v. Indus. Claim Appeals Office*, 924 P.2d 1173, 1177 (Colo.App.1996).

### III. Conclusion

We conclude that the Panel did not err in setting aside the hearing officer's order.

The order is affirmed.

Judge FURMAN concurs.

Judge GABRIEL dissents.

Judge GABRIEL dissenting.

I agree with the majority's conclusion that the medical use of marijuana by an employee holding a registry card under article XVIII, section 14 of the Colorado Constitution (medical marijuana amendment) is not pursuant to a prescription and therefore does not constitute the use of "medically prescribed controlled substances" within the meaning of section 8–73–108(5)(e) (IX.5), C.R.S.2010. The question thus becomes whether application of section 8–73–108(5)(e) (IX.5) to deny claimant benefits here violated the medical marijuana amendment. The majority holds that it did not, because in its view, the medical marijuana amendment merely created an immunity from criminal prosecution, and not a separate constitutional right. Because I disagree with that conclusion and believe that the amendment, in fact, established a right to possess and use medical marijuana in the limited circumstances described therein, I respectfully dissent.

### I. Constitutional Construction

"In construing a constitutional provision, our obligation is to give effect to the intent of the electorate that adopted it." *Harwood v. Senate Majority Fund, LLC*, 141 P.3d 962, 964 (Colo.App.2006). We look to the words used, reading them in context and according them their plain and ordinary meaning. *Id.* If the language is clear and unambiguous, we must enforce it as written. *Davidson v. Sandstrom*, 83 P.3d 648, 654 (Colo.2004).

"Language in an amendment is ambiguous if it is 'reasonably susceptible to more than one interpretation.'" *Id.* (quoting *Zaner v. City of Brighton*, 917 P.2d 280, 283 (Colo. 1996)). If the language of a citizen-initiated measure is ambiguous, "a court may ascertain the intent of the voters by considering

other relevant materials such as the ballot title and submission clause and the biennial 'Bluebook,' which is the analysis of ballot proposals prepared by the legislature." *In re Submission of Interrogatories on House Bill 99–1325,* 979 P.2d 549, 554 (Colo.1999). "We consider the object to be accomplished and the mischief to be prevented by the provision." *Harwood,* 141 P.3d at 964.

Here, as the majority points out, several provisions of the medical marijuana amendment state that the authorized use of medical marijuana establishes an affirmative defense or an exception from the state's criminal laws for the possession or use of marijuana. *See, e.g.,* Colo. Const. art. XVIII, § 14(2)(a)-(c), (4)(b). Section 14(4)(a) of that amendment, however, provides, *"A patient may engage in the medical use of marijuana,* with no more marijuana than is medically necessary to address a debilitating medical condition. A patient's medical use of marijuana, within [certain listed] limits, *is lawful ...."* (Emphasis added.)

Because section 14(2)(a)-(c), on the one hand, and (4)(a), on the other hand, appear to be separate and do not modify one another, in my view, one could reasonably read the amendment, as the majority does, merely to establish an affirmative defense or exception to prosecution for possession or use of marijuana. Conversely, one could reasonably read the amendment as creating a right to use medical marijuana (within established limits). Accordingly, I believe that the language of the amendment is ambiguous. *See Davidson,* 83 P.3d at 654 (language in an amendment is ambiguous if it is reasonably susceptible of more than one interpretation). Thus, I turn to extrinsic aids to attempt to ascertain the voters' intent in passing this amendment. *See In re Submission of Interrogatories,* 979 P.2d at 554.

As presented to Colorado voters, the ballot title of the medical marijuana amendment read, in pertinent part:

> *An amendment to the Colorado Constitution authorizing the medical use of marijuana for persons suffering from debilitating medical conditions,* and, in connection therewith, establishing an affirmative defense to Colorado criminal laws for patients and their primary caregivers relating to the medical use of marijuana; establishing exceptions to Colorado criminal laws for patients and primary caregivers in lawful possession of a registry identification card for medical marijuana use and for physicians who advise patients or provide them with written documentation as to such medical marijuana use; defining "debilitating medical condition" and authorizing the state health agency to approve other medical conditions or treatments as debilitating medical conditions....

Colorado Legislative Council, Research Pub. No. 475–0, *An Analysis of 2000 Ballot Proposals* (Bluebook) 35 (2000) (emphasis added).

Although this title may not be a model of clarity, I read it to provide that the general intent of the amendment was to authorize the medical use of marijuana, and then to list specific provisions that would implement that general intent.

My interpretation finds further support in the Bluebook, which provided an analysis of the medical marijuana amendment. That analysis nowhere mentioned any immunity from or exception to state criminal laws. Rather, it stated, in pertinent part:

> The proposed amendment to the Colorado Constitution:
>
> - allows patients diagnosed with a serious or chronic illness and their caregivers to *legally possess* marijuana for medical purposes....
>
> - allows a doctor to *legally provide* a seriously or chronically ill patient with a written statement that the patient might benefit from medical use of marijuana....
>
> ....
>
> Current Colorado and federal criminal law prohibits the possession, distribution, and use of marijuana. The proposal does not affect federal criminal laws, but amends the Colorado Constitution *to legalize the medical use of marijuana for patients who have registered with the state.*
>
> ....

Patients on the registry are allowed *to legally acquire, possess, use, grow, and transport marijuana and marijuana paraphernalia.* Employers are not required to allow the medical use of marijuana in the workplace.

*Id.* at 1 (emphasis added).

Similarly, in the section of the Bluebook entitled, "Arguments For," the proponents of the amendment stated, "Using marijuana for other than medical purposes will still be illegal in Colorado. *Legal use of marijuana will be limited to patients on the state registry."* *Id.* at 2 (emphasis added).

"Legalize" means "[t]o make lawful; to authorize or justify by legal sanction." *Black's Law Dictionary* 977 (9th ed. 2009); *accord Webster's Third New International Dictionary* 1290 (2002) (defining "legalize" to mean "to make legal: give legal validity or sanction to"). Accordingly, in my view, the medical marijuana amendment was intended not merely to create a defense to a charge of marijuana possession or use, but rather to make medical marijuana possession and use legal under the conditions identified in the amendment.

Although in *Roe v. TeleTech Customer Care Mgt. (Colo.), LLC,* 171 Wash.2d 736, 257 P.3d 586, —— (2011), the Washington Supreme Court reached the opposite conclusion, I note that the language of the Washington State Medical Use of Marijuana Act is quite different from that of the relevant portions of Colorado's medical marijuana amendment. For example, as adopted by Washington voters, the Washington act's statement of purpose provided, as pertinent here,

Therefore, the people of the state of Washington intend that ... [q]ualifying patients with terminal or debilitating illnesses who, in the judgment of their physicians, would benefit from the medical use of marijuana, shall not be found guilty of a crime under state law for their possession and limited use of marijuana....

Wash. Rev.Code § 69.51A.005 (version in effect from adoption in 1998 until amended July 22, 2007) (quoted in *Roe,* 257 P.3d at 590). The act further stated the intent of the voters to provide a defense to caregivers and physicians and to provide an affirmative defense to both qualifying patients and caregivers. Wash. Rev.Code §§ 69.51A.005, 69.51A.040(2). As noted above, Colorado's medical marijuana amendment is not similarly limited, when read as a whole.

Nor am I persuaded that section 14(10)(b) of the medical marijuana amendment provides the broad exception that the Panel asserts. That section provides, "Nothing in this section shall require any employer to accommodate the medical use of marijuana in any work place." Colo. Const. art. XVIII, § 14(10)(b). "Medical use," in turn, is defined as

the acquisition, possession, production, use, or transportation of marijuana or paraphernalia related to the administration of such marijuana to address the symptoms or effects of a patient's debilitating medical condition, which may be authorized only after a diagnosis of the patient's debilitating medical condition by a physician or physicians, as provided by this section.

*Id.* at § 14(1)(b).

In my view, these provisions are clear and unambiguous and refer solely to the acquisition, possession, production, use, or transportation of medical marijuana, or paraphernalia related to it, *in the workplace.* I do not believe that these provisions encompass the presence of marijuana in one's blood after the lawful use of medical marijuana at home. In particular, I am not persuaded that the presence of medical marijuana in one's blood amounts to either "use," which I believe connotes contemporaneous consumption, or "possession," which I interpret as holding at one's disposal, within the meaning of the above-quoted definition. If it did, then under a zero-tolerance policy like that at issue here, many patients who are eligible to use medical marijuana would likely abandon their right to do so, because even lawful use at home would put their benefits, and perhaps even their jobs, at risk. I do not believe that the voters who passed the medical marijuana amendment intended section 14(10)(b) to sweep that broadly. *Cf.* § 24–34–402.5, C.R.S.2010 (providing that, subject to certain exceptions, it is a discriminatory or unfair employment practice for an employer to terminate the em-

ployment of an employee for engaging in lawful activity off the premises of the employer during nonworking hours).

Given my view that sections 14(1)(b) and (10)(b) of the medical marijuana amendment are unambiguous, I would not resort to extrinsic aids to ascertain their meaning. Were I to do so, however, I believe that the available extrinsic evidence supports my interpretation of those provisions. Thus, as noted above, the analysis contained in the Bluebook noted, "Employers are not required to allow the medical use of marijuana in the workplace." Bluebook, at 1. To me, this analysis makes clear that the voters' intention was precisely what the amendment says it was, namely, to give employers the right to prohibit the acquisition, possession, production, use, or transportation of medical marijuana, or paraphernalia related to it, in the workplace.

For these reasons, I would conclude that claimant had a constitutional right to possess and use medical marijuana pursuant to the limitations contained in the medical marijuana amendment. I recognize that such an interpretation could potentially implicate Supremacy Clause issues, given prevailing federal law. In my view, the same issues could apply to the majority's interpretation because the medical marijuana amendment creates a regulatory scheme that potentially conflicts with federal law. Because no party has raised any issue concerning the Supremacy Clause, however, I do not address that question.

II.  Constitutionality of Denial of Benefits

The question thus becomes whether the denial of benefits to claimant here was consistent with his constitutional rights. In my view, it was not.

"[E]ven though a person has no 'right' to a valuable governmental benefit and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not rely. It may not deny a benefit to a person on a basis that infringes his constitutionally protected interests ...." *Perry v. Sindermann,* 408 U.S. 593, 597, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); *accord 44 Li-*

*quormart, Inc. v. Rhode Island,* 517 U.S. 484, 513, 116 S.Ct. 1495, 134 L.Ed.2d 711 (1996); *Alliance for Open Society Int'l, Inc. v. U.S. Agency for Int'l Dev.,* 651 F.3d 218, —— (2d Cir.2011). This rule, known as the doctrine of "unconstitutional conditions," however, is not absolute. Thus, the doctrine allows the government to condition the grant of a discretionary benefit on the release of a constitutional right when the government has an interest that outweighs the particular constitutional right at issue. *See Lorenz v. State,* 928 P.2d 1274, 1283 (Colo.1996).

The United States Supreme Court has long held that unemployment compensation benefits constitute one type of governmental benefit that cannot be conditioned on a willingness to abandon one's constitutional rights. *See, e.g., Hobbie v. Unemployment Appeals Comm'n,* 480 U.S. 136, 139–42, 107 S.Ct. 1046, 94 L.Ed.2d 190 (1987); *Thomas v. Review Bd.,* 450 U.S. 707, 716–18, 101 S.Ct. 1425, 67 L.Ed.2d 624 (1981); *Sherbert v. Verner,* 374 U.S. 398, 403–06, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963); *see also Everitt Lumber Co. v. Indus. Comm'n,* 39 Colo.App. 336, 339 & n. 3, 565 P.2d 967, 969 & n. 3 (1977) (holding that "invoking the protection of the Fifth Amendment, or refusing to waive its protections, may not be used as the basis for denying ... claimants unemployment compensation benefits," but not reaching the question of whether a denial of benefits due solely to a private employee's assertion of Fifth Amendment rights would be precluded on the basis that such action would amount to state action under the Fourteenth Amendment).

Thus, where the state conditions receipt of an important benefit on conduct protected by the constitution, or where it denies such a benefit based on constitutionally protected conduct, thereby putting substantial pressure on an adherent to modify his or her behavior and forgo the exercise of a constitutional right, a burden on that right exists. *See Hobbie,* 480 U.S. at 141, 107 S.Ct. 1046; *Thomas,* 450 U.S. at 717–18, 101 S.Ct. 1425. "While the compulsion may be indirect, the infringement upon [the exercise of that constitutional right] is nonetheless substantial." *Thomas,* 450 U.S. at 718, 101 S.Ct. 1425;

accord *Hobbie,* 480 U.S. at 141, 107 S.Ct. 1046.

The foregoing case law thus suggests three issues to be decided in this case: (1) whether the denial of benefits here constituted state action; (2) if so, whether the state conditioned the receipt of such benefits on the release of a constitutional right; and (3) if so, whether the state's interest outweighs the constitutional right in question. I address each of these issues in turn.

First, in *Hobbie, Thomas,* and *Sherbert,* the Supreme Court made clear, albeit implicitly, that a denial of unemployment benefits arising from the exercise of a constitutional right constitutes state action. *See Hobbie,* 480 U.S. at 139–42, 107 S.Ct. 1046; *Thomas,* 450 U.S. at 716–18, 101 S.Ct. 1425; *Sherbert,* 374 U.S. at 403–06, 83 S.Ct. 1790. I would so hold here.

Second, for the reasons set forth above, I believe that claimant had a constitutional right to use medical marijuana, and in my view, the denial of benefits based on his exercise of that right infringed the right. Specifically, claimant was denied benefits solely because he exercised his constitutional right to use medical marijuana. In this regard, this case is similar to *Hobbie, Thomas,* and *Sherbert,* in which the claimants were denied benefits solely because they chose to exercise their religious beliefs, which resulted in their being discharged from employment. *Hobbie,* 480 U.S. at 138, 107 S.Ct. 1046; *Thomas,* 450 U.S. at 709–13, 101 S.Ct. 1425; *Sherbert,* 374 U.S. at 399–401, 83 S.Ct. 1790. In my view, the denial of benefits here, like the denial of benefits in *Hobbie, Thomas,* and *Sherbert,* placed substantial pressure on claimant to forgo the exercise of his constitutional rights, and thereby burdened his exercise of those rights. Although the compulsion may have been indirect, it was nonetheless substantial. *See Hobbie,* 480 U.S. at 141, 107 S.Ct. 1046; *Thomas,* 450 U.S. at 718, 101 S.Ct. 1425; *cf. Employment Div., Dep't of Human Resources of Oregon v. Smith,* 494 U.S. 872, 883–85, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990) (distinguishing *Sherbert, Hobbie,* and *Thomas* in a case, unlike the present one, in which the court construed the claimant to be seeking an exemption from generally applicable criminal law on free exercise of religion grounds); *see also Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah,* 508 U.S. 520, 559–77, 113 S.Ct. 2217, 124 L.Ed.2d 472 (1993) (Souter, J., concurring) (criticizing *Smith* and calling for its reexamination).

Finally, I perceive nothing in the record to suggest that the state's interest in denying benefits here outweighs claimant's constitutional rights. In their appellate brief, the People asserted, in conclusory fashion, that claimant had no constitutional right at all. Based on that premise, which I believe to be incorrect, the People did not proceed to address the balancing of interests and, thus, failed to indicate any state interest that outweighs claimant's rights. Because my own review of the record and applicable case law failed to reveal such an interest, I would conclude that the state's interests do not outweigh claimant's interests here.

For these reasons, I believe that claimant's lawful use of medical marijuana outside of the workplace—particularly where, as here, there is no evidence of any impairment of performance in the workplace—cannot constitutionally be used as a basis for denying claimant unemployment benefits.

Accordingly, I respectfully dissent.